# HARLEY-DAVIDSON MOTOR COMPANY, INC. ET AL.
## v. MICHAEL S. WISNIEWSKI

[No. 440, September Term, 1981.]

*Decided December 8, 1981.*

The cause was argued before GILBERT, C. J., and MOORE and LISS, JJ.

*Deborah E. Jennings,* with whom were *Edward S. Digges, Jr., John S. Johnson* and *Piper & Marbury* on the brief, for appellant Harley-Davidson Motor Company, Inc. *Phillips L. Goldsborough, III,* with whom were *John J. Boyd, Jr.,* and *Smith, Somerville & Case* on the brief, for appellant William R. Garrett t/a Garrett's Harley-Davidson.

*Patrick A. O'Doherty* and *James R. White,* with whom was *Michael P. May* on the brief, for appellee.

LISS J., delivered the opinion of the Court.

In April of 1978, Michael S. Wisniewski, appellee, purchased a new Harley-Davidson Low Rider motorcycle from Garrett's Harley-Davidson. William R. Garrett, one of the appellants herein, is the owner and operator of Garrett's Harley-Davidson dealership located in Darlington, Maryland. Harley-Davidson Motor Co., Inc. (hereinafter Harley-Davidson), is the other appellant herein.

On July 27, 1979, the appellee filed a five count declaration in the Superior Court of Baltimore City,[1] seeking both compensatory and punitive damages, based upon theories of breach of warranty, negligence, and strict liability. The action arose out of an accident on September 16, 1978 involving the appellee while he was riding his Harley-Davidson motorcycle.

---

1. The five counts alleged: strict liability (Count I); negligence (Count II); implied warranty of merchantability (Count III); breach of express warranty (Count IV); and breach of implied warranty for fitness (Count V).

Prior to trial the court granted the motion of appellant Garrett for partial summary judgment as to the punitive damage claim against him. A cross-claim seeking indemnity, or contribution in the alternative, was asserted by appellant Garrett against appellant Harley-Davidson, and a similar cross-claim was asserted by Harley-Davidson against Garrett.

Before, during, and after the trial appellant Harley-Davidson raised the question of the legal sufficiency of appellee's claim for punitive damages. Harley-Davidson filed a motion for summary judgment on the issue of punitive damages which was denied. The case then came to trial before a jury. Harley-Davidson filed motions for directed verdicts, both at the close of the plaintiff's case and at the close of all the evidence. Both were denied. Appellants also objected to the punitive damage instructions to the jury.

At the conclusion of the plaintiff's evidence, Garrett moved for a directed verdict, arguing lack of sufficient evidence to send the case to the jury. The court denied the motions as to Counts I, III, and V, granted the motion as to Count IV, and reserved ruling as to Count II. At the conclusion of all of the evidence Garrett resubmitted his motion for a directed verdict on both the sufficiency of evidence and with respect to both cross-claims. The trial judge denied the motion as to Count II, but granted the motions on the cross-claims, ruling that if the accident resulted from a defect in the motorcycle as claimed by plaintiff, such defect was one which occurred during the manufacture of the motorcycle at the Harley-Davidson factory. The court further ruled that Garrett was entitled to indemnity from Harley-Davidson for any judgment which might be returned against Garrett.

Appellee then elected to dismiss the warranty counts and the case was submitted to the jury on Counts I and II as to both defendants. Verdicts were returned against both appellants in the amount of $544,604 for compensatory damages and a verdict was returned for punitive damages in the amount of $1,900,000 against appellant Harley-Davidson only. Harley-Davidson then moved for judgments N.O.V.,

new trial, or remittiturs and the motion was denied. In accordance with its rulings on the motions for directed verdicts on the cross-claims, the trial court thereafter entered judgment in favor of Garrett against Harley-Davidson for indemnity for the full amount of Garrett's liability to plaintiff, and entered judgment in favor of Garrett as cross-defendant with respect to the cross-claim of Harley-Davidson against him. Both appellants then noted this appeal. Harley-Davidson raises the following two issues to be determined by this Court:

I. Whether the trial court erred in denying appellant's motion for a directed verdict on the issue of punitive damages?

II. Whether the trial court should have granted a new trial on the issue of compensatory damages because of the claimed prejudice by the allegedly erroneous submission of the punitive damage issue to the jury?

The question presented by appellant Garrett is as follows:

In the event of a reversal of the judgment for compensatory damages against appellant, Harley-Davidson Motor Company, Inc., must there also be a reversal of the judgment against appellant, William R. Garrett, where the sole basis of the imposition of liability against Garrett was proof of a defect in the motorcycle existing when the motorcycle left the hands of the manufacturer, Harley-Davidson, and the defect was not created by any active negligence on the part of Garrett?

Garrett's appeal is protective in nature.

Michael S. Wisniewski, plaintiff below and appellee herein, purchased a new Harley-Davidson motorcycle from Garrett's Harley-Davidson in April of 1978. On September 16, 1978, appellee was riding his motorcycle at approximately 25 m.p.h. on an "S" shaped curve along Key Highway in South Baltimore when the throttle slipped off the handlebar. He lost control of the bike, crossed into the lanes of on-coming traffic and collided with a car traveling in the opposite lane at approximately the same speed.

Appellee's principal injuries consisted of leg fractures of the right tibia and left femur. He required hospitalization for slightly less than two months and his total expenses for medical care and hospitalization were $14,786.20. In addition, he lost $11,152 in income. Repairs to his motorcycle cost $2,964.09. The stipulated total of medical bills, lost income and property damage was $28,902.29.

The throttle control mechanism of the motorcycle was the type which operates the throttle by rotating the right handgrip on the handlebar. As the handgrip is rotated, a cable (throttle cable) connected to the handgrip and to the carburetor is retracted or extended, causing the motorcycle to accelerate or decelerate. The handgrip is affixed to the handlebar by an aluminum alloy clamp (throttle clamp) which by design permits the handgrip to rotate but holds it on the handlebar. The clamp is comprised of two hemicircular halves, each basically shaped like the letter "C", which are placed at the top and bottom of the handlebar (vertically opposed). When the clamp halves are thus placed, there is a slight horizontal gap between the ends of the two clamp halves, because the outside diameter of the handlebar is slightly larger than the inside diameter between the two hemicircular halves would be if the two clamp halves were drawn snugly together without being placed on the handlebar. A vertical hole is drilled through each end of the hemicircular clamp halves and the clamp is drawn together by a machine screw (clamp screw) on each side and compresses upon the handlebar, thus holding the throttle control mechanism on the handlebar. Only the bottom clamp half is threaded to receive the clamp screws; the hole in the top clamp half is drilled out to a larger size so that each screw passes freely through the hole on each side and the head of each clamp screw draws the clamp halves together as the clamp screws engage the threads of the lower clamp half and are tightened. The alleged defect in this case was stated as an improper assembly of the throttle control clamp causing a clamp screw to suddenly fracture. This, it is contended, permitted the throttle control mechanism to

come off the handlebar while the appellee was operating his motorcycle.

The evidence adduced at trial established, through the testimony of metallurgists Dr. Carl A. Zappfe and Dr. Robert Pond, that at some time a clamp screw had been cross-threaded, *i.e.,* introduced into the threaded hole in the lower clamp half out of synchronization with the existing threads in the forward hole (towards the front of the motorcycle) of the throttle clamp. This clamp screw had been driven into the threaded hole all the way to the bottom in a cross-threaded position. Following the accident, the head of the clamp screw was missing. The evidence also established that the clamp screw which was in the forward hole of the throttle clamp on the day of the accident was cross-threaded but not driven all the way to the bottom. Both experts agreed that the cross-threading caused the clamp screw to bind in the clamp, and that continuing to drive the screw downward while cross-threaded caused the screw to fracture.

The evidence was in dispute as to the characteristics of the fracture of the screw and the time when the fracture occurred. Dr. Pond, called by appellant Harley-Davidson, testified that the fracture of the screw occurred all at once and that the presence of dirt and corrosion indicated that the motorcycle had been operated for some time with the head of the forward clamp screw broken off and with the screw on the rear side of the clamp thereafter tightened severely to hold the clamp on and to compensate for the lack of clamp tension resulting from the breaking off of the screw on the forward side.

The appellee called as an adverse witness one Mr. Meinert, who identified himself as Harley-Davidson's assembly expert and corporate representative. He gave a description of the manner of assembly and installation of the throttle control mechanism, which were required in order to maintain the throttle in place on the handlebars of the motorcycle. Meinert admitted that the method of installation and assembly was less than perfect but insisted that it did not create a dangerous condition.

Dr. Pond, called as an expert witness by Harley-Davidson, agreed that the method of assembly would create an increased probability of the forward clamp screw becoming misthreaded. Both Pond and appellee's expert, Dr. Zappfe, expressed the opinion that the cross-threading of the clamp screw probably occurred during the original assembly at the Harley-Davidson factory. Dr. Zappfe testified that the fracture of the clamp screw occurred in stages, the last stage occurring immediately preceding the accident. He opined that the presence of corrosion indicated a prior internal fracture which compromised the structural integrity of the clamp screw and set up the final fracture.

In our consideration of the issues raised by the appellants in this case, we note initially that appellants do not challenge the jury's specific finding of negligence on the part of the appellants. The question then remains whether there was sufficient evidence to require the trial judge to submit to the jury the question of the assessment of punitive damages against the appellant.

Maryland has adhered to the principle that a manufacturer is required to compensate a consumer for all injuries proximately caused by products either defectively designed or manufactured. *Lahocki v. Contee Sand and Gravel Co., Inc.,* 41 Md. App. 579, 398 A.2d 490 (1979); *rev'd on other grounds,* 286 Md. 714, 410 A.2d 1039 (1980); *Phipps v. General Motors Corp.,* 278 Md. 337, 363 A.2d 955 (1976); *see* Maryland Code (1975) of the Commercial Law Article §§ 2-313 through 2-318.

This Court, in *American Laundry Machine Industries v. Horan,* 45 Md. App. 97, 412 A.2d 407 (1980) (a case of first impression as to the award of punitive damages in product liability cases), stated the rule in Maryland to be that punitive damages may be recovered in tort actions only if malice is shown. The type or degree of malice required to be demonstrated depends upon the nature of the tort. Judge Wilner, speaking for this Court, said: "Where the tort arises from neither a contractual relationship nor the operation of a motor vehicle, the malice necessary to warrant punitive damages has been defined as 'conduct of an extraordinary

nature characterized by a wanton and reckless disregard for the rights of others.'" *American Laundry Machine Industries v. Horan, supra,* at 112. *See also Wedeman v. City Chevrolet Co.,* 278 Md. 542, 366 A.2d 7 (1976); *St. Paul at Chase Corp. v. Manufacturers Life Insur. Co.,* 262 Md. 192, 278 A.2d 12 (1971), *cert. denied,* 404 U.S. 857, 92 S.Ct. 104, 30 L.Ed.2d 98 (1972). The standard as enunciated in product liability cases requires "direct evidence of substantial knowledge on the part of the manufacturer that the product is, or is likely to become, dangerous, and a gross indifference to the danger." *American Laundry Machine Industries v. Horan, supra,* at 117.

We have carefully considered the voluminous record extract filed in this case and we find no evidence that Harley-Davidson was aware of the cross-threaded throttle clamps. Nor does the evidence reveal the existence of a design defect which would inherently present the probability of recurrence of the danger to the consumer. There was more than sufficient evidence to establish negligence on the part of Harley-Davidson. It was obvious from the testimony that the appellant had used less than an ideal assembly process which involved the complete tightening of each of the throttle screws separately, rather than alternating each to the desired level of torque. There was, however, no evidence to establish the manufacturer's substantial knowledge of the existence of the danger to the plaintiff. *See* D. G. Owen, *Punitive Damages in Products Liability Litigation,* 74 Mich. L. Rev. 1256, 1343 (1976). The standard which will sustain an award of punitive damages in a product liability case has been stated by Professor Owen in the following fashion:

> First, the manufacturers must be either aware of or culpably indifferent to an unnecessary risk of injury. Second, knowing that its product is or might be excessively dangerous, the manufacturer must intransigently refuse either to determine the seriousness of the danger or to reduce it to an acceptable level. *Owen* at 1362.

In order to find "recklessness" in such circumstances there must be a readily perceptible danger and a conscious choice by the manufacturer to market the product despite the risk. *See Thomas v. Cytoscope,* 414 F. Supp. 255 (E.D. Pa. 1976). We find nothing in the record to substantiate knowledge of the existence of the danger by the manufacturer or gross indifference to its existence. Under all the circumstances, we conclude that the trial court erred when it denied Harley-Davidson's motions for directed verdict on the issue of punitive damages.

Appellant finally urges that it is entitled to a new trial on the issue of compensatory damages because it was substantially prejudiced by the trial court's erroneous submission of the punitive damage issue to the jury. It points out that Maryland has never had occasion to evaluate the prejudicial impact on compensatory damages of an erroneous denial of a motion for directed verdict on a claim for punitive damages. This Court, however, has held that evidence of a defendant's wealth is probative and admissible only where a *prima facie* case for punitive damages has been established. *See Derby v. Jenkins,* 32 Md. App. 386, 363 A.2d 967, *cert. denied,* 278 Md. 720 (1976). Appellant suggests that the evidence of wealth of the defendant and the impassioned plea by plaintiff's counsel for punishment of Harley-Davidson created an obvious potential for prejudice and resulted in an improper verdict for compensatory damages. It suggests the only cure for this prejudicial potential is, in effect, the adoption of a *per se* rule that where such error occurs, a new trial as to compensatory damages must be allowed. We do not agree that such a rigid rule is mandated. We prefer to examine the evidence, on a case-by-case basis, and to determine whether a new trial on the issue of compensatory damages is required where a case has been erroneously submitted to the jury on the issue of punitive damages.

Our examination of the evidence in this case convinces us that there is no proof that the verdict for compensatory damages in this case was based on prejudice or bias. The appellee, a comparatively young man, sustained serious

injuries to both legs which resulted in the permanent shortening of one of his limbs. The plaintiff, without objection, submitted to the jury a *per diem* calculation of what plaintiff considered an appropriate award for pain and suffering of $465,702. *See Eastern Shore Public Service Co. v. Corbett,* 227 Md. 411, 177 A.2d 701 (1962). The plaintiff requested $615,000 as compensatory damages. The trial judge specifically instructed the jury not to consider the defendant's financial circumstances in reaching its decision of an appropriate award for compensatory damages. The only response of Harley-Davidson to plaintiff's request for assessment of compensatory damages was an assertion that the jury did not necessarily have to accept the figures of the plaintiff but could put in their own, and a disclosure to the jury that the plaintiff's top pretrial demand was for the sum of $250,000. In the light of all these circumstances we do not find that the jury's award of compensatory damages in the amount of $544,604 was influenced by a desire to punish the appellant, particularly since the jury returned a verdict against the defendant in the amount of $1,900,000 as punitive damages.

> *Judgment for punitive damages vacated, judgment for com-compensatory damages affirmed, costs to be divided equally between the parties.*