Leonard SAVAL and Saval-Director, Inc.; John Frost; Ann Frost; Michael Kilchenstein; Grace Kilchenstein, Appellants,

v.

BL LTD.; Jaguar Rover Triumph, Inc.; Royston Distributors, Inc.; Capital Motors, Ltd.; Manhattan Auto, Inc., Appellees.

No. 82–1707.

United States Court of Appeals, Fourth Circuit.

Argued April 12, 1983.

Decided June 28, 1983.

---

Barbara S. Brewer, Baltimore, Md. (J. Hardin Marion, Tydings & Rosenberg, Baltimore, Md., on brief), for appellants.

George E. Hughes, III, Baltimore, Md. (Geoffrey S. Mitchell, Charles P. Goodell, Jr., Semmes, Bowen & Semmes, Baltimore, Md., on brief), for appellees.

Before HALL and ERVIN, Circuit Judges, and TURK,* District Judge.

PER CURIAM:

Appellants purchased twelve-cylinder Jaguar automobiles.[1] Each automobile developed defects which, according to appellants, were of six types: fluid leakage from the power steering system, engine overheating, engine and transmission oil leakage, vibration and pulsation of the front brakes, malfunctioning of the climate control systems, and malfunctioning of the electrical systems. Appellants believe that the foregoing problems resulted from a faultily designed cooling system. Each appellant was required to have his or her Jaguar repaired a number of times, but the problems were never remedied completely.

Appellants joined in what they maintain is their common cause and instituted suit in the United States District Court for the District of Maryland against everyone in the chain of distribution of these automobiles. The complaint alleged the existence of claims under the Magnuson-Moss Warranty Act—Federal Trade Commission Improvement Act, 15 U.S.C. §§ 2301 *et seq.* ("Act"), and various state statutes and tort law doctrines. Appellants moved for dismissal of the complaint under Fed.R.Civ.P. 12(b). The district court dismissed the complaint in its entirety under Fed.R.Civ.P. 12(b)(1) on the ground that subject matter jurisdiction over the claims was lacking.[2] Appellants challenge this ruling.

Aggrieved consumers may sue to enforce rights under the Act in state, 15 U.S.C. § 2310(d)(1)(A), or federal, 15 U.S.C. § 2310(d)(1)(B), court. Federal court jurisdiction, however, is limited by 15 U.S.C. § 2310(d)(3) which provides:

(3) No claim shall be cognizable in a suit brought under paragraph (1)(B) of this subsection—

(A) if the amount in controversy of any individual claim is less than the sum or value of $25;

(B) if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit; or

(C) if the action is brought as a class action, and the number of named plaintiffs is less than one hundred.

Each of the appellants' claims exceeds twenty-five dollars, and the suit was not filed as a class action. Accordingly, we are concerned mainly with subsection (d)(3)(B), although subsections (d)(3)(A) and (C) may aid in its interpretation.

The court below, in dismissing the complaint, ruled that the total amount in con-

---

* Honorable James C. Turk, United States District Judge for the Western District of Virginia, sitting by designation.

1. There is some disagreement as to whether this appeal involves three or four automobiles, and as to whether appellant Ahlam Al-Awadi is still a party hereto. In light of our determination that the district court properly dismissed the action for want of subject matter jurisdiction, the parties' dispute as to this point is not material.

2. Appellants argue that, because the district court considered affidavits and other exhibits extraneous to the pleadings, it should have converted the motion to dismiss into one for summary judgment under Fed.R.Civ.P. 56, and that summary judgment was erroneously granted because material issues of fact were genuinely

in dispute. This is incorrect, however, because only motions under Rule 12(b)(6) are subject to conversion into summary judgment motions. Fed.R.Civ.P. 12(b), last sentence. As to motions to dismiss under Rule 12(b)(1), courts may consider affidavits and other extrinsic information to determine whether subject matter jurisdiction exists. 5 C. Wright & A. Miller, *Federal Practice & Procedure: Civil* § 1364 (1969 & Supp.1983). *See, e.g., Bowman v. Curt G. Joa, Inc.,* 361 F.2d 706 (4th Cir.1966).

Appellants also urge that disposition of the jurisdictional question should have been deferred until trial of the merits. We conclude that the record is sufficiently developed to determine whether subject matter jurisdiction exists.

troversy falls short of the $50,000 requirement. Appellants maintain that the threshold may be reached under one of three theories: (1) that their claims may be aggregated; (2) that each is entitled to attorneys fees, and that these may be added to each of their claims; and (3) that among their demands is a prayer for punitive damages, and that this is sufficient to bring any one of them within the jurisdictional limit. We conclude that the district court properly disallowed each of these three theories, and affirm the judgment below.

## I.

■ Appellants argue, first, that, by aggregating the compensatory damages sought by each, the $50,000 requirement may be reached. They maintain that aggregation of the claims is proper because § 2310(d)(3)(B) creates a "major new substantive right" of joinder which supersedes that found in Fed.R.Civ.P. 20.[3]

This conclusion cannot be reached from the language of the statute itself. All that is certain from § 2310(d)(3)(B) is that aggregation of claims is contemplated in some cases; it says nothing about what *types* of cases. The fact that § 2310(d)(3)(C) sets forth an additional requirement for class actions reveals further that aggregation of claims is permissible when the parties are not suing as a class.

The legislative history does not address this specific issue. Several comments in the House Report, however, are helpful: "The purpose of these jurisdictional provisions is to avoid trivial or insignificant actions being brought as class actions in the federal courts." H.R.Rep. No. 93–1107, 93d Cong., 2d Sess., *reprinted in* [1974] U.S.Code, Cong. & Ad.News 7702, 7724. Further, it provides:

> Under the monetary and other limitation included in subsection (d), no action could be brought in a United States district court unless the overall matter in controversy exceeded $50,000 exclusive of interests and cost, and no individual claim

could be aggregated in any such action <u>by joinder</u> or in a class action unless it exceeded $25.

*Id.* (emphasis supplied). The underscored language suggests that the ordinary rules of joinder should apply in such actions. Indeed, we can find no support for appellants' assertion that a "substantive right of joinder" is contemplated by the Act. Rather, the Act allows aggregation of the claims of plaintiffs who are otherwise properly joined. The right to aggregate cannot be equated with the right of joinder.

Further, the attempt to characterize joinder as a "substantive right" is troublesome. Joinder is usually thought of as a procedural device by which parties with similar substantive claims might jointly enforce them. Were the statute an affirmative grant of the right to join under circumstances which might not otherwise exist, then perhaps it could be viewed as creating a "substantive" right. But § 2310(d) is not such an affirmative grant; it is a restriction on the exercise of subject matter jurisdiction, and does not even mention "joinder." Claims not enforceable in federal court because of the restrictions found in § 2310(d)(3) may be brought in state court. 15 U.S.C. § 2310(d)(1)(A). The provision only describes the methods for enforcing the Act's substantive rights. (In fact, § 2310 is entitled "Remedies." Pub.L. No. 93–637, § 110, 88 Stat. 2189 (1974).)

Were we to accept plaintiff's rationale, no basis could be found to disallow the joinder of completely unrelated claims. (Appellants do not suggest what the parameters of any such substantive right of joinder should be.) This would be inconsistent with the structure of § 2310(d), which is designed to restrict access to federal courts. Accordingly, we hold that the court below properly considered the issue of aggregation under the principles of joinder found in Fed.R.Civ.P. 20.

---

**3.** Rule 20 provides, in relevant part: "All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action."

■ Appellants argue in the alternative that their claims satisfy the requirements of Rule 20, and that the district court's finding that they do not was "clearly erroneous." The proper standard of review, however, is whether the trial judge abused his discretion in denying joinder of these parties. *Mosley v. General Motors Corp.,* 497 F.2d 1330, 1332 (8th Cir.1974).[4] We conclude that the district court judge did not abuse his discretion in denying joinder.

The district court held specifically that these parties did not satisfy the "transaction or occurrence" test of Rule 20. Application of this test has generally proceeded on a case by case basis. *Id.,* 497 F.2d at 1333. The "transaction or occurrence test" of the rule "would permit all reasonably related claims for relief by or against different parties to be tried in a single proceeding. Absolute identity of all events is unnecessary." *Id.* Further, the rule should be construed in light of its purpose, which "is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits." *Id.,* 497 F.2d at 1332. *See, generally,* 7 C. Wright & A. Miller, *Federal Practice and Procedure: Civil* § 1652 (1972 & Supp. 1983).

Plaintiffs complain essentially that they purchased their automobiles and experienced similar problems, none of which could be fixed satisfactorily. The district court found that the appellants' analysis "conveniently glosses over the differences between the unique histories of each of the four automobiles." District Court Mem.Op. at 3. Further, the court found that appellants had "not demonstrated that any of the alleged similar problems resulted from a common defect." *Id.* Plaintiffs argue that the similar problems do satisfy the transaction or occurrence requirement. Further, they argue that they need not, to prevail on their warranty claims, establish a common cause for the defects.

The district court did not err in determining that the allegedly similar problems did not satisfy the transaction or occurrence test. The cars were purchased at different times, were driven differently, and had different service histories. Quite probably, severance would have been required in order to keep straight the facts pertaining to the separate automobiles. At least as to the warranty claims, the similarity of defects is irrelevant; each complainant need only demonstrate what warranties were made, and the extent to which the products differed therefrom.

Appellants also maintain that the "transaction or occurrence" requirement was satisfied because each plaintiff relied on common misrepresentations and received identical warranties. Appellees counter that there has been no proof of reliance on the common misrepresentations, and that the same warranty was *not* given to each plaintiff. (The affidavit of John T. Verdeaux, ¶ 3, and the exhibits attached thereto, tend to support appellees' contention in the latter regard.) The district court did not address these specific grounds for joinder under Rule 20, and appellees say that appellants never raised them until this appeal. (The district court did find, however, in its discussion concerning punitive damages, that appellants have not stated a claim for fraud.)

We conclude that the allegations of fraud and common warranties do not satisfy the "transaction or occurrence" test. As the district court found with respect to the fraud claims, "[t]he only basis for presale allegations of fraud in this case consists of advertisements and warranties similar to those made by every automobile manufac-

---

4. Both parties seem to assume that the "clearly erroneous" standard of review applies. Appellees cite *Spencer v. Woody,* 212 F.2d 668 (4th Cir.1954) as being "directly on point." In that case, though, it appears that the district court made its determination after some kind of a hearing at which sworn testimony was received. In this case, however, it appears that the district court judge made his determination after considering affidavits, the pleadings, and argument by counsel. It does not appear that an evidentiary hearing was held to resolve any factual uncertainties. Thus, the question before this court is one of law, in connection with relatively undisputed facts, and the "clearly erroneous" standard, ordinarily applicable to purely factual determinations, does not apply.

turer who sells automobiles in this country." District Court Mem. Op. at 9. To accept appellants' argument would be to open the federal courts to every claim involving products purchased from large manufacturers, simply through the device of alleging that all consumers relied on the companies' advertising. Similarly, every purchaser of a given product could join with every other purchaser, even if the products suffered from different defects, on the basis that a common warranty was given as to each product.

Allowing joinder of these appellants' claims would not further the policies behind § 2310(d), which is to restrict access to federal courts. Further, the purposes behind Rule 20 would not be furthered; considering the claims asserted by appellants in a single action would not enhance judicial economy. Considering the record as a whole, it is apparent that each appellant's claim stands on its own. Each purchased an automobile that did not live up to his or her hopes or expectations. The defects were similar, but there the commonality ended.[5]

Based on the foregoing, we conclude that the district court judge did not abuse his discretion by denying joinder under these circumstances.[6] This may be unfortunate, for appellants may now be barred by the applicable statutes of limitations from proceeding in state court as to at least some of their claims. That risk is inherent, however, whenever lawsuits of questionable

justiciability are brought in courts of limited jurisdiction.

## II.

■ Appellants argue, second, that prospective attorneys fees may be included in calculating the amount in controversy. The statute provides that the $50,000 threshold must be reached "exclusive of interests and costs . . . ." 15 U.S.C. § 2310(d)(3)(B). The Act also provides that litigants may be entitled "to recover as part of the judgment a sum equal to the aggregate amount of cost and expenses (including attorneys' fees based on actual time expended) . . . ." 15 U.S.C. § 2310(d)(2). Appellants maintain that the parenthetical clause allowing attorneys' fees exemplifies only the term "expenses" and not "cost." Thus, because § 2310(d)(3)(B) only excludes from the calculation of the amount in controversy "costs," "expenses," including attorneys' fees, may be included.

Although the statute is not precisely worded as to this point, we conclude "cost and expenses" should be read together, and that "attorneys' fees" are an example of both. Appellees correctly point out that to consider attorneys' fees as being included in the "amount of controversy" would render the $25 requirement as to individual claims found in § 2310(d)(3)(A) meaningless.[7] Further, the construction chosen is most consistent with the provision's restrictive nature.

**5.** The district court found that the case was unlike *In re General Motors Corp. Engine Interchange Litigation,* 594 F.2d 1106 (7th Cir.), *cert. denied,* 444 U.S. 870, 100 S.Ct. 146, 62 L.Ed.2d 95 (1979). We agree. That case involved a large class action in which each plaintiff had purchased an Oldsmobile in which a Chevrolet engine had been installed. The common defect was easily identifiable in each case, and the defendants' liability would not depend upon the singular driving and service histories of each automobile. The common defect was the very heart of each lawsuit. In the instant matter, as we have said, the common problem—consistent overheating of the engine—is not of primary relevance. Rather, the effects of any such problem—the six classes of defects identified by appellants—are at the center of this

litigation. These are not as easily identified as the institutionalized engine swap in the *General Motors* litigation. Each of these appellants is, relative to the complainants in *General Motors,* in a unique situation.

**6.** We express no opinion as to whether *allowing* joinder under these facts would have been within his discretion.

**7.** On the other hand, § 2310(d)(3)(A) does not exclude "interests and costs" from the amount in controversy. Accordingly, one might argue that even "costs" can be included in § 2310(d)(3)(A), and that the provision is, therefore, meaningless. The omission must have been unintentional.

Appellants seek to draw an analogy from diversity cases holding that attorneys' fees may be considered as part of the jurisdictional amount requirement even though the statute provides that the amount shall be calculated "exclusive of interest and costs . . . ." 28 U.S.C. § 1332(a). *See Missouri State Life Ins. Co. v. Jones,* 290 U.S. 199, 54 S.Ct. 133, 78 L.Ed. 267 (1933). In the cases cited by appellants, however, state statutes or contractual provisions transformed attorneys fees into substantive rights to which the litigants were entitled.[8] Those cases did not involve a federal statute, defining "cost and expenses," analogous to § 2310(d)(2). Therefore, although the language of 28 U.S.C. § 1332(a) is nearly identical to that contained in 15 U.S.C. § 2310(d)(3)(B), the latter statute must be construed in the light of § 2310(d)(2). Accordingly, although these diversity cases provide an impressive analogy, they are of limited applicability.

We conclude that the construction most in accord with § 2310(d), the purpose of which is to restrict access to federal courts, is that "cost and expenses" should be read as one, and that "attorneys' fees" are included within that unit. Thus, "cost" as used in § 2310(d)(3)(B) includes attorneys fees, and so they cannot be considered in calculating the jurisdictional amount. *Cf. Gates v. Collier,* 616 F.2d 1268, 1278 (5th Cir.1980) (stating, in dicta, that § 2310(d) defines "costs" as including attorneys fees).[9]

### III.

Appellants' final contention is that they are entitled to punitive damages, which may be added to the amount in controversy in order to reach the jurisdictional amount. The district court rejected the prayer for punitive damages, after a critical analysis of appellants' arguments and Maryland law.

Appellants base their claim for punitive damages upon these theories: (1) concealment of product defects; (2) failure to warn of known defects; (3) post-market failure to remedy known defects; and (4) common law fraud. They say that the "essence" of their claim "is that the defendants are culpable for breaches of warranty coupled with outrageous and reckless conduct."

■ We agree with the district court that Maryland law governs the availability of punitive damages under the Act. *Schafer v. Chrysler Corp.,* 544 F.Supp. 182, 185 (N.D.Ind.1982); *Lieb v. American Motors Corp.,* 538 F.Supp. 127, 132–33 (S.D.N.Y. 1982); *Novosel v. Northway Motor Car Corp.,* 460 F.Supp. 541, 545 (S.D.N.Y.1978). Further, claims for punitive damages proffered for the purpose of achieving the jurisdictional amount should be carefully examined. *Zahn v. International Paper Co.,* 469 F.2d 1033, 1033 n. 1 (2d Cir.1972), aff'd, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973).

■ Under Maryland law, no matter what the theory of recovery, punitive damages cannot be recovered absent malice, actual or implied. *H & R Block, Inc. v. Testerman,* 275 Md. 36, 338 A.2d 48, 52 (1975); *Harley-Davidson Motor Co. v. Wisniewski,* 50 Md.App. 339, 437 A.2d 700, 704–05 (1982), cert. denied, —— Md. —— (Feb. 5, 1982); *American Laundry Machinery v. Horan,* 45 Md.App. 97, 412 A.2d 407, 416 (1980). Punitive damages are not available for mere breaches of contract, but they may be recovered "in tort actions arising out of contractual relationships." *Testerman,* 338 A.2d at 53; *Horan,* 412 A.2d at 416–17. A tort "arises out of a contractual relation-

---

8. In addition to *Missouri State Life Ins. Co. v. Jones,* appellants rely on *Batts Restaurant, Inc. v. Commercial Ins. Co. of Newark,* 406 F.2d 118 (7th Cir.1969); *San Juan Hotel Corp. v. Greenberg,* 502 F.Supp. 34 (E.D.N.Y.1980) (suit on judgment providing for attorneys fees), aff'd 646 F.2d 562 (2d Cir.1980), cert. denied, 450 U.S. 1043, 101 S.Ct. 1762, 68 L.Ed.2d 241 (1981); *Schreiber v. Blankfort,* 76 F.R.D. 474 (D.Conn.1977); and *Stamps v. State Farm Mutual Auto Ins. Co.,* 300 F.Supp. 545 (1969).

9. We are cognizant of the fact that reading "cost and expenses" as one unit does not explain why § 2310(d)(3)(B) excludes only "interests and costs," and not "expenses." This tends to suggest that "expenses" are not the same as "costs," and supports appellants' contention that "attorney fees" modifies the former, and not the latter. As between two equally troublesome interpretations of the statute, however, we conclude that the one chosen is more in line with the statutory purpose.

ship" when "the tortious conduct and the contract [are] so intertwined that one [cannot] be viewed in isolation from the other." *General Motors Corp. v. Piskor,* 281 Md. 627, 381 A.2d 16, 21 (1977); *accord, Horan,* 412 A.2d at 417. When the tort arises from a contractual relationship, "actual" malice must be shown. This means that the act must be performed "without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff." *Testerman,* 338 A.2d at 52. In ordinary tort cases, however, (apart from those involving the operation of motor vehicles), the requisite malice is implied, and requires "conduct of an extraordinary nature characterized by a wanton or reckless disregard for the right of others." *Wedeman v. City Chevrolet Co.,* 278 Md. 524, 366 A.2d 7, 13 (1976); *accord, Horan,* 412 A.2d at 417.

Appellants argue primarily that the district court erred in not applying *Horan* and *Harley-Davidson* to this matter, asserting that those cases allow the awarding of punitive damages in "products liability cases." However, they involved personal injuries arising from products defects, and really have no applicability to this matter. The case at bar involves not "products liability" in the traditional sense, but a breach of warranty case with, perhaps, fraudulent overtones.[10] The fraudulent overtones arise from allegedly deceptive and false advertising and meaningless warranties.

■ Insofar as the allegations relate to promissory contractual undertakings, they do not support a claim for fraud or, consequently, punitive damages. *Appel v. Hupfield,* 198 Md. 374, 84 A.2d 94, 96 (1951). Accordingly, any claim that punitive damages are available merely because the cars did not comply with the warranties must be rejected.

Appellants' primary contention, however, seems to be that appellees knowingly uttered false advertising and intentionally issued warranties which they could not honor.

Assuming that this behavior could be fraudulent, we agree with the district court that it does not support a claim for punitive damages. In similar cases, the Maryland courts have allowed punitive damages when the conduct has been "outrageous." *Wedeman,* 366 A.2d at 13; *Thomassen Lincoln-Mercury, Inc. v. Goldbaum,* 45 Md.App. 297, 413 A.2d 218, 223–25 (1980). In those cases, however, automobile dealers told "patent lies" to individual purchasers "in response to pointed and material questions about the condition of the [cars] . . . ." *Thommasen Lincoln-Mercury, Inc.,* 413 A.2d at 225.

This case is of an entirely different nature. These appellants claim essentially that they purchased automobiles that did not live up to their expectations or the appellees' boasts. Every advertisement contains elements of "puffing." Laws against truly deceptive and false advertising are designed to keep this "puffing" within bounds. Advertising that is not blatantly illegal, yet which consumers believe to be unjustified by the product, eventually is exposed by market forces. The same is true of warranties to which the product cannot conform; and, further, the seller is left open to lawsuits for breach of warranty for every product that is sold. These appellants have suffered only the general harm suffered by consumers of these automobiles. This is, perhaps, bad business; but it is not, in a free market economy, so outrageous as to warrant the imposition of punitive damages in individual cases.

The district court dismissed the appellants' fraud claim based upon advertisements on the alternative ground that they failed to particularize their complaint, pursuant to Fed.R.Civ.P. 9(b) and a court order, as to "the time, place, maker and content of each alleged misrepresentation and the facts misrepresented." District Court Mem.Op. at 5. The appellants' amended complaint sets forth some relatively specific allegations, *see* Amended Complaint ¶¶ 12, 13, 56, 57, 58, 75, 76, 77, 110, 111, 112, but

---

10. Appellants suggest that the alleged defects were potentially dangerous to human life, and that the type of analysis found in *Horan* and

*Harley-Davidson* should apply. These bald allegations, however, do not alter the essential nature of the case.

not in the detail required by the district court's order. Appellants maintain that the district court, in so doing, misconstrued their claim for punitive damages based on promotional advertisements. They say their "claim for punitive damages is based, in part, on the theory that the defendants attempted to conceal known defects from consumers through *affirmative conduct* such as promotional activities (advertisements) and statements made by representatives of the dealer defendants and Royston." Appellants' Brief at 49 (emphasis in original). We do not see, however, how this differs from any other claim of fraud. They also maintain that they can recover punitive damages by pleading "a breach of warranty coupled with malice." *Id.* at 50. However, this is not relevant to the issue of false advertising.

Appellants' claim regarding Rule 9(b) depends upon their argument that they can recover punitive damages without proving fraud, *viz.*, by proving "fraudulent-type behavior." Again, however, appellants' characterization of their claims does not alter the essential nature of the case, which concerns breaches of warranties and inaccurate advertising. Appellants' only hope for the recovery of punitive damages is a fraud theory. By recharacterizing appellees' behavior as being of a "fraudulent type," they cannot escape the requirements of Rule 9(b).

For the foregoing reasons, we affirm the ruling of the district court.[11]

AFFIRMED.

---

**11.** This ruling is without prejudice to the motion filed by appellants in the district court for relief pursuant to Fed.R.Civ.P. 60(b).