QUALITY AUTOMOTIVE COMPANY

v.

SIGNET BANK/MARYLAND.

Civ. No. HM–90–1213.

United States District Court,
D. Maryland.

Sept. 9, 1991.

David Machanic, Washington, D.C., for plaintiff.

Steven K. Fedder, Baltimore, Md., for defendant.

## MEMORANDUM AND ORDER

HERBERT F. MURRAY, Senior District Judge.

On May 2, 1990, plaintiff filed this suit against Signet Bank/Maryland, asserting breach of an obligation of good faith. Pending before this Court is defendant's Motion to Dismiss for failure to state a claim for which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1]

---

1. Defendant has attached certain exhibits to the motion to dismiss. Under Rule 12(b) of the Federal Rules of Civil Procedure, if such exhibits "are presented to and not excluded by the court, the motion shall be treated as one for summary judgment." However, in this instance, the Court will exclude the exhibits and analyze the motion under Rule 12(b)(6). The Court has not considered the exhibits in ruling on this motion.

Plaintiff, Quality Automotive Company ("QAC") is the assignee of the claim of Parts Pro Distributing, Inc. ("Parts Pro"). Parts Pro, formed in August of 1985 by the merger of two local warehouse automobile parts distributors, entered into a loan and security agreement with Union Trust Company of Maryland which is presently known as Signet Bank/Maryland. The purpose of the loan was to provide Parts Pro with up to $2,000,000 credit to be used for working capital, debt payment, and for financing the sale of automobile parts on the automotive repair market. Plaintiff, in its complaint, asserts that the defendant breached a duty of good faith with respect to the loan and security contract when it terminated Parts Pro's line of credit and stopped replenishing Parts Pro's operating account. Defendant contends, among other things, that not only was there no breach of an obligation of good faith but also that an implied obligation of good faith in the performance of contracts cannot serve as a basis for an independent cause of action.

*Is There a Cause of Action for Breach of Good Faith in Maryland?*

■ Defendant, in support of its assertion that a claim for breach of good faith is not grounds for an independent cause of action, relies on *Management Assistance, Inc. v. Computer Dimensions, Inc.*, 546 F.Supp. 666 (N.D.Ga.1982) *aff'd*, 747 F.2d 708 (11th Cir.1984). The court in *Management Assistance* held that an implied obligation of good faith in the performance of contracts, as derived from Georgia's UCC Sec. 1–203, cannot serve as the basis for an independent cause of action. *Id.* at 677. Defendant urges this Court to follow *Management Assistance* and rule that breach of good faith cannot be the sole basis for a cause of action under Maryland's UCC provisions.

The court in *Management Assistance* based its findings on *Chandler v. Hunter*, 340 So.2d 818 (Ala.Civ.App.1976), which stated that the "[f]ailure to act in good faith in the performance or enforcement of contracts or duties under [Alabama's UCC] does not state a claim for which relief may be granted in Alabama." *Chandler v.*

*Hunter*, 340 So.2d at 821. However both the Sixth Circuit and First Circuit have chosen a different direction and concluded that a claim for breach of good faith is sufficient to independently sustain a cause of action.

In *Reid v. Key Bank of Southern Maine, Inc.*, 821 F.2d 9 (1st Cir.1987), the Court of Appeals for the First Circuit stated:

> [W]e reject the applicability of *Chandler* and the cases based on it … [A] determination that no such cause of action exists would conflict with the clear meaning of section 1–203 of the UCC.

*Id.* at 13. The court found that the Uniform Commercial Code as adopted by Maine, 4 Me.Rev.Stat.Ann. tit. 11, Sec. 1–203 (1964), imposes an obligation of good faith in every contract with regard to the contract's performance and enforcement. "That this obligation carries with it a cause of action seems clear from another provision of the Code [Sec. 1–106]: Any right or obligation declared by this title is enforceable by action unless the provision declaring it specifies a different and limited effect." *Id.* at 12.

In *K.M.C. Co. v. Irving Trust Co.*, 757 F.2d 752 (6th Cir.1985), the Sixth Circuit examined a claim for breach of good faith with regard to a secured line of credit which provided the defendant bank with a first lien security interest in the plaintiff's accounts receivable, much like the agreement in the present case. The court held that there is a duty of good faith in every contractual relation that may require giving adequate notice before refusing to further advance funds:

> [An] obligation to act in good faith would require a period of notice to K.M.C. to allow it reasonable opportunity to seek alternative financing, absent valid business reasons precluding Irving from doing so.

*Id.* at 759. The adequacy of good faith notice however would be a factual matter to be determined by the jury or the court acting as fact finder.

This Court has found no relevant precedent coming out of Maryland or the Fourth

Circuit concerning breach of good faith as an independent cause of action. However, the Court finds the reasoning of the First and Sixth Circuits on this issue to be sound. Following the analysis of the First and Sixth Circuits, this Court holds that under Maryland's UCC Sec. 1–203 in conjunction with UCC Sec. 1–106, there is an independent cause of action for breach of good faith with respect to the performance and enforcement of a contract.

*Does the Complaint Make out a Claim?*

■ In this case defendant, Signet Bank/Maryland, had a first lien security interest in Parts Pro's accounts receivable. Defendant felt that its security interest was jeopardized when Parts Pro purchased a controlling interest in RPS Products, Inc., an auto parts retailer financed by Citicorp Industrial Credit, Inc. because Citicorp held as its security a first lien on RPS's inventory and accounts receivable. Defendant, allegedly fearful of losing its security interest, subsequently chose to terminate the loan and security agreement that it had with plaintiff. Defendant claims that the termination was not done in an unfair, anticompetitive manner but rather it was done in good faith and with sufficient notice.

If plaintiff has asserted in its complaint that Signet Bank/Maryland breached its Maryland UCC Sec. 1–203 obligation to exercise good faith in the operation and termination of its contract with Parts Pro by not supplying Parts Pro with adequate notice and a reasonable opportunity to find alternative financing, then plaintiff should have a right to go forth with its claim for breach of good faith as an independent cause of action. In its complaint plaintiff does allege such facts.

Plaintiff alleges that defendant threatened to liquidate Parts Pro on several occasions because Parts Pro rejected a refinancing plan offered by defendant after the purchasing of RPS, and that defendant, without sufficient notice, failed to fund Parts Pro's operating accounts, consequently causing checks that Parts Pro had issued to be dishonored. (Complaint at 22.) Plaintiff further claims that defendant failed to extend temporary financing under its loan and security agreement to at least cover checks that had been issued. In addition, plaintiff contends that defendant failed to allow reasonable time for Parts Pro to complete a refinancing package with existing lenders that would have paid off Parts Pro's entire debt to defendant and allowed for a fair termination of the loan agreement. (Complaint at 20.) Defendant contends that more than sufficient notice was given.

Unlike a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, which goes to the merit of the claim and examines whether there is a genuine issue of material fact, a motion to dismiss under Rule 12(b)(6) is designed to test only whether a claim for which relief might be granted has been alleged within the complaint. "Thus, on a motion under Rule 12(b)(6), the court's inquiry essentially is limited to the content of the complaint." *See* 5A C. Wright & A. Miller, *Federal Practice and Procedure* Sec. 1356, at 296 (1990). Since QAC's complaint has sufficiently alleged facts upon which a claim for breach of good faith could be brought, the complaint cannot be dismissed simply because the defendant has asserted that the facts with which the plaintiff has brought suit do not adequately support plaintiff's contentions.

■ The test used for determining if there has been a breach of good faith is primarily a subjective one, or a question of fact. *Reid v. Key Bank of Southern Maine, Inc.,* 821 F.2d 9, 15 (1st Cir.1987). Generally, one has not acted in breach of good faith when one has acted honestly. *Id.* Plaintiff's allegations in the complaint sufficiently raise a question as to the defendant's honesty and good faith with regard to the loan and security agreement and satisfy today's liberal requirements for stating a claim upon which relief may be granted.

Defendant contends that plaintiff cannot sufficiently allege bad faith because plaintiff has failed to show that Parts Pro was not in default under Sec. 5.1 of the loan and security agreement. Within this section are sixteen events constituting default al-

lowing the bank to terminate the loan agreement. However, the defendant still has a duty to exercise good faith with regard to notice when deciding to terminate the loan and security agreement. *Id.* Plaintiff alleges that defendant did not act in good faith. Thus, the complaint will not be dismissed for failure to state a claim.

*Exemplary or Punitive Damages*

Defendant next contends that plaintiff's request for exemplary damages should not be allowed because exemplary damages cannot be awarded for breach of contract actions. The Court of Appeals for the Fourth Circuit, in *Saval v. BL Ltd.*, 710 F.2d 1027 (4th Cir.1983), stated that "[u]nder Maryland law, no matter what the theory of recovery, punitive damages cannot be recovered absent malice, actual or implied." *Id.* at 1033. Plaintiff claims that defendant's breach was done with malice sufficient to warrant the awarding of exemplary damages. Plaintiff feels that here the malicious breach of good faith warrants punitive damages because it arose out of not only a contractual relationship but also the defendant's tortious violation of the applicable statutory provisions of the UCC.

 The duty to act in good faith here is one imposed by law under UCC Sec. 1–203. "When the duty to exercise good faith is imposed by law rather than the contract itself, the breach of that duty is tortious. Therefore, punitive damages are recoverable." *First Nat'l Bank in Libby v. Twombly*, 689 P.2d 1226, 1230 (1984).

 When a tort is alleged to arise out of a contractual relationship, actual malice is the essential prerequisite to the recovery of punitive damages. *H & R Block, Inc. v. Testerman*, 275 Md. 36, 47, 338 A.2d 48, 54 (1975). The test for determining actual malice has been set out in *Drug Fair of Maryland, Inc. v. Smith*, 263 Md. 341, 283 A.2d 392 (1971).

> To find actual malice requires finding the performance of an unlawful act, intentionally or wantonly, without legal justification or excuse but with an evil or rancorous motive influenced by hate; the purpose being to deliberately and wilfully injure the plaintiff.

*Id.* at 352. To make out a claim for punitive damages in Maryland, plaintiffs must allege a distinct and recognizable tort, regardless of whether that tort arises out of, precedes, or is intertwined with the contractual relationship. *Brand Iron, Inc. v. Koehring Co.*, 595 F.Supp. 1037, 1040 (1984). Further, plaintiff must show that the tort was committed with an evil or rancorous motive with the intent to injure the plaintiff. *Id.*

 In ruling on this motion to dismiss exemplary damages pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court once again must examine the complaint on its face. *See* 5A C. Wright & A. Miller, *Federal Practice and Procedure* Sec. 1356 (1990). Plaintiff states in Count I of its complaint that "[t]he acts of defendant complained of herein were done with the intention of injuring Parts Pro in the conduct of its business and done in retribution for Parts Pro having done business with a competitor bank, and were inflicted with actual malice, oppression, and a reckless and wanton disregard of the rights of Parts Pro." (Complaint P. 24.) Plaintiff has alleged facts which are sufficient to support an allegation of actual malice. These allegations together with the complaint that defendant tortiously breached its duty of good faith, are on their face sufficient to sustain a claim for punitive damages.

Defendant also argues that Sec. 1–106(1) does not allow for punitive damages unless specifically called for in the particular Code section. Section 1–106 provides that "neither consequential or special nor penal damages may be had except as specifically provided in titles 1 through 10 of this article or by other rule of law." Md.Com.Law Code Ann. Sec. 1–106(1) (1975). UCC Sec. 1–203 does not provide for punitive damages. However, plaintiff is not asking for punitive damages under a pure breach of contract action. If plaintiff were suing merely for pure breach of contract under 1–203, "Obligation of Good Faith", punitive damages would not be available. Plaintiff however, is seeking punitive damages for defendant's alleged tortious breach of con-

tract and has sufficiently alleged malice as required by *Drug Fair of Maryland, supra.* Therefore plaintiff's claim for punitive damages will not be dismissed.

*Private Cause of Action*

██ Defendant also alleges in its 12(b)(6) motion that plaintiff does not have standing to bring a private cause of action under 5–807 of the Financial Institutions Article of the Annotated Code of Maryland. To determine whether plaintiff has standing to assert a private right of action, this Court must apply the three part test set forth in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), and applied by the Fourth Circuit in *Newcome v. Esrey,* 862 F.2d 1099 (4th Cir.1988). The test is as follows:

> First, is the plaintiff one of the class for whose especial benefit the statute was enacted,—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?

*Newcome v. Esrey,* at 1103 (citing *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975)).

The first question is whether the plaintiff is in the class for whose benefit Sec. 5–807 of the Financial Institutions Article of the Annotated Code of Maryland was enacted. *Id.* Defendant, in its motion, concedes that plaintiff satisfies this factor.

The second question is whether there is any indication of a legislative intent, explicit or implicit, either to create a private remedy or to deny one. *Id.* Defendant contends that since Sec. 5–807 of the statute provides for a criminal punishment, there should be no civil remedy available. However, this Court disagrees with defendant. Plaintiff, as a person injured by a violation of Sec. 5–807, has not been precluded by the statute from seeking a civil remedy for damages.

Defendant points out that Sec. 9–912 of the Financial Institutions Article explicitly provides for a private cause of action while 5–807 does not. Defendant argues that since 9–912(g) provides the possibility for civil actions and 5–807 does not, the legislature clearly intended that no civil remedies would be available under 5–807. First, the Court notes that 9–912 deals with violations by directors or officers of savings and loan associations, a wholly different subject matter than 5–807, which is about unfair or anticompetitive practices of banking institutions. Moreover, section 9–912(g) merely provides that the civil penalties in that provision should not be construed to preclude private civil actions. The legislature gives no indication that such a private right of action should be precluded in Section 5–807, which explicitly provides criminal penalties but no civil fine. In this case, the legislative intent as to a private cause of action under 5–807 is not evident from the statute or its history.

The third and final factor of this test is whether it is consistent with the underlying purpose of the legislative scheme to imply a private remedy for the plaintiff. *Id.* This Court feels that a private remedy under Sec. 5–807 is consistent with the purpose of the legislative scheme. Section 5–807 was enacted to prevent anticompetitive and unfair practices by banking institutions. The criminal prosecution is simply one possible remedy to the situation. Allowing a private cause of action under 5–807 is consistent with the legislative scheme and provides a remedy directly to the parties who are injured by violations of the statute. In summary, plaintiff is in the class of persons meant to be protected by 5–807, there is no evident legislative intent as to private remedies under Sec. 5–807, and allowing such a private remedy is consistent with the underlying legislative scheme. Thus, this Court holds, under the *Cort v. Ash* analysis, that Sec. 5–807 implicitly allows for a civil remedy.

This Court finds that the plaintiff's complaint is sufficient to withstand defendant's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Accordingly, it is this 9th day of September, 1991, by the United States District Court for the District of Maryland,

ORDERED:

(1) that the defendant's Motion to Dismiss, be, and the same hereby is, *Denied;* and

(2) that defendant shall file an answer to the complaint within twenty (20) days from the date of this Memorandum and Order.