983 F.2d 1057
 19 UCC Rep.Serv.2d 961
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
QUALITY AUTOMOTIVE COMPANY, A Corporation, Plaintiff-Appellant,
v.
SIGNET BANK/MARYLAND, A Corporation, Defendant-Appellee.
 No. 92-1619.
 United States Court of Appeals,
Fourth Circuit.
 Argued: October 26, 1992
Decided: January 15, 1993
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Herbert F. Murray, Senior District Judge. (CA-90-1213-HM)
 Jane Juliano, REED, SMITH, SHAW & MCCLAY, Washington, D.C., for Appellant.
 Steven Keith Fedder, Ava Elaine Lias-Booker, WEINBERG & GREEN, Baltimore, Maryland, for Appellee.
 David Machanic, REED, SMITH, SHAW & MCCLAY, Washington, D.C., for Appellant.
 Edward F. Patz, Gilbert Bernard Weiner, WEINBERG & GREEN, Baltimore, Maryland, for Appellee.
 D.Md.
 AFFIRMED.
 Before MURNAGHAN, Circuit Judge, CHAPMAN, Senior Circuit Judge, and YOUNG, Senior United States District Judge for the District of Maryland, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 The plaintiff, Quality Automotive Company ("QAC"), appeals the district court's grant of summary judgment in favor of defendant Signet Bank/Maryland ("Signet").
 
 
 2
 The facts are essentially undisputed. QAC is the assignee of a claim belonging to Parts Pro Distributing, Inc. ("Parts Pro"). Parts Pro's claim arises from the termination of a commercial financing agreement between it and the Union Trust Company of Maryland. The Union Trust Company of Maryland is now known as Signet Bank/Maryland.
 
 
 3
 Parts Pro was formed when two automobile parts warehouse distributors merged in August, 1985. In September, 1985 Parts Pro entered into a loan and security agreement with Signet. The purpose of the agreement was to provide Parts Pro with a $2,000,000 line of credit. The credit line was used by Parts Pro as working capital and for debt repayment and the financing of automobile parts sold to auto parts stores and suppliers in the automobile parts repair market.
 
 
 4
 In September, 1986, Parts Pro decided to replace Signet, as its lender, with another bank. As a result, on September 19, 1986, Parts Pro and Signet agreed that Parts Pro would pay off its obligations to Signet within sixty days. The parties also agreed that Signet could stop funding Parts Pro's line of credit at the expiration of this sixtyday period without notice.
 
 
 5
 Parts Pro's agreement to obtain replacement financing with a new lender fell through, and Parts Pro could not repay its obligations to Signet within the sixty-day period. Based on assurances that new financing was imminent, Signet agreed to extend time for Parts Pro's repayment and to continue financing Parts Pro's operations under the credit line for another thirty days. At the end of thirty days, however, Parts Pro had not secured new financing.
 
 
 6
 Signet had the contractual authority to cease funding Parts Pro's credit line on November 19, 1986, but for six months, Parts Pro continued its efforts to obtain new financing, and Signet continued to extend both Parts Pro's repayment deadline and the period during which Signet would continue to fund Parts Pro's credit line. Finally, on April 23, 1987, Signet informed Parts Pro by letter that, as a condition precedent to making any loan advances after May 8, 1987, Parts Pro must furnish Signet a commitment letter from another lender providing financing sufficient to repay all of Parts Pro's obligations to Signet.
 
 
 7
 Parts Pro did not provide Signet with the required letter. On May 20, 1987 Signet ceased funding Parts Pro's credit line, blocked Parts Pro's operating account and exercised its right to declare all obligations under the loan and security agreement due and payable in full May 26, 1987. On June 1, 1987 Parts Pro filed a petition for reorganization under Chapter 11 of the United States Bankruptcy Code.
 
 
 8
 * QAC filed suit against Signet on May 2, 1990, alleging that Signet had breached the financing agreement by terminating Parts Pro's line of credit and blocking Parts Pro's operating account. In Count I QAC claimed that Signet had breached its implied obligation of good faith in terminating the loan agreement by not supplying Parts Pro with adequate notice and a reasonable opportunity to obtain alternative financing. QAC claimed that Maryland UCC § 1-203 required Signet to act in good faith in performing under the loan agreement.[1] QAC of this article imposes an obligation of good faith in its performance or enforcement." Md. Com. Law I Code Ann. § 1-203 (1992). also claimed that Signet's failure to act in good faith as required by § 1-203 constituted an independent cause of action in tort.[2]
 
 
 9
 Signet responded by filing a Motion to Dismiss the complaint for failure to state a claim for which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The district court, adopting the reasoning of the First and Sixth Circuits[3], held that Maryland UCC § 1-203 in conjunction with Maryland UCC § 1-106, created an independent cause of action for breach of good faith with respect to the performance and enforcement of a contract. Quality Automotive Co. v. Signet Bank/Mary land, 775 F. Supp. 849, 851-52 (D. Md. 1991).[4] Therefore, the district court denied the Motion to Dismiss and held that QAC had stated a claim for which relief could be granted. Id. at 853.
 
 
 10
 After discovery, the district court granted summary judgment for Signet on the ground that Parts Pro's evidence failed to support any inference that Signet had failed to act in good faith in performance of the loan agreement.
 
 
 11
 Summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute over facts is considered "material" when it might affect the outcome of a suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.
 
 
 12
 We affirm the district court's grant of summary judgment in favor of Signet on the grounds that the undisputed facts do not present any inference upon which a reasonable jury could find that, by terminating Parts Pro's credit line and blocking Parts Pro's operating account in May 1987, Signet breached the terms of its 1985 loan agreement with Parts Pro. Because none of Signet's actions constituted a breach of its loan agreement with Parts Pro there is no violation of Maryland UCC § 1-203.
 
 II
 
 13
 Count II of QAC's complaint alleged that Signet had violated section 5-807(a)(2) of the Financial Institutions Article of the Annotated Code of Maryland.[5] QAC contended that Signet had terminated its loan and security agreement with Parts Pro because Parts Pro had decided to seek financing with another lender.
 
 
 14
 In response, Signet filed a 12(b)(6) motion on the grounds that § 5807 did not provide QAC with a private right of action. Applying the three-part test set forth by the Supreme court in Cort v. Ash, 422 U.S. 66, 78 (1975), the district court held that § 5-807 implicitly provided QAC with a private right of action. Quality Automotive Co., 775 F. Supp. at 854.[6]
 
 
 15
 After discovery, the district court granted summary judgment in favor of Signet on the ground that Parts Pro had presented no evidence upon which a reasonable jury could find that Signet had acted in bad faith in performing under its loan agreement with Parts Pro.
 
 
 16
 We affirm the district court's grant of summary judgment in favor of Signet on the grounds that QAC failed to present any evidence upon which a reasonable jury could find that Signet breached the terms of its 1985 loan agreement with Parts Pro. Therefore, no reasonable jury could find that Signet's actions constituted a violation of § 5-807.
 
 AFFIRMED
 
 
 [1]
 Section 1-203 states: "Every contract or duty within Titles 1 through 10
 
 
 [2]
 Maryland UCC § 1-106(2) states: "Any right or obligation declared by Titles 1 through 10 of this article is enforceable by action unless the provision declaring it specifies a different and limited effect." Md. Com. Law I Code Ann. § 1-106(2) (1992)
 
 
 [3]
 See Reid v. Key Bank of S. Maine, Inc., 821 F.2d 9 (1st Cir. 1987), and K.M.C. Co. v. Irving Trust Co., 757 F.2d 752 (6th Cir. 1985)
 
 
 [4]
 In its brief Signet has suggested that we reverse the district court's denial of its 12(b)(6) motion. The only issue on appeal, however, is the correctness of the district court's grant of summary judgment. The Maryland Court of Appeals has not ruled on whether there is an independent cause of action under Maryland UCC § 2-103 and we feel that this matter is best left for the Maryland state courts to decide
 
 
 [5]
 Section 5-807(a) states in part,"[a] banking institution may not: ... (2) Impose as a condition for a loan any restriction on obtaining credit, property, or service from a competitor unless the restriction is reasonably necessary to secure the loan." Md. Fin. Inst. Code. Ann. § 5-807(a)(2) (1992)
 
 
 [6]
 Signet has suggested in its brief that the district court erred in recognizing a private right of action under § 5-807. The only issue on appeal, however, is the correctness of the district court's grant of summary judgment. The issue of whether a private right of action exists under § 5-807 is best left to the Maryland state courts