John Michael SCHAEFER

v.

AETNA LIFE & CASUALTY COMPANY, et al.

Civil No. K–95–2294.

United States District Court, D. Maryland.

Jan. 4, 1996.

John M. Schaefer, pro se.

V. Timothy Bambrick, George E. Reede, Jr., and Niles, Barton & Wilmer, Baltimore, Maryland, for defendants.

FRANK A. KAUFMAN, Senior District Judge.

This case arises out of a dispute between plaintiff, John Michael Schaefer (Schaefer),[1] a citizen of Nevada,[2] and defendant Aetna Life and Casualty Company (Aetna), a Connecticut corporation with its principal place of business in Connecticut, regarding Aetna's handling of an insurance claim. The relevant facts—particularly those related to the issues of subject matter jurisdiction and availability of punitive damages—are essentially undisputed. The Aetna insurance policy at issue covered the Schaefer Hotel located, in Baltimore, Maryland owned by Schaefer. Defendant Provident Bankshares (Provident) apparently held a mortgage on that hotel property and therefore purchased fire insurance on that property from Aetna.[3] While Provident and Aetna negotiated the insurance contract, Schaefer paid the policy premiums.[4] A fire occurred at the hotel on November 9, 1991. Schaefer seemingly unsuccessfully pursued a claim against Aetna,[5] and this litigation followed.

Schaefer contends that Aetna stalled in making payment regarding his claim, in the hope of avoiding any payment at all. Examples of Aetna's alleged stalling include asking for documentation supporting repair costs, a

1. Plaintiff, proceeding *pro se*, has stated that he is a member of the bars of the Supreme Court of the United States (Certificate of Service attached to plaintiff's October 13, 1995 supplemental memorandum in opposition to defendant's summary judgment motion), of Nevada and of California (plaintiff's October 2, 1995 Opposition to Defendant's Motion for Summary Judgment at 1).

2. Plaintiff's December 28, 1995 letter brief (Document Number 14 in the official court file).

3. Schaefer states that he presently seeks no relief from Provident, and that he named Provident as a defendant only because Provident refused to participate as a plaintiff. Complaint ¶¶ 3, 5. Provident is a Maryland corporation with its principal place of business in Maryland. Accordingly, the fact that plaintiff so named Provident cannot affect diversity of citizenship.

4. Complaint ¶ 3.

5. Defendants' September 18, 1995 Motion for Summary Judgment, Exhibit A, Affidavit of Charles L. Lentz [hereinafter Lentz Aff.] at ¶ 5; Plaintiff's October 2, 1995 Opposition to Defendants' Motion for Summary Judgment [hereinafter Plaintiff's October 2, 1995 Opp. to Summ. J.] at 10 (Declaration of John M. Schaefer at ¶ 2). Provident states that after this litigation was initiated, Provident received payment from Aetna in "full and final settlement of its claim." Lentz Aff. at ¶ 6. Apparently, Provident applied that payment to Schaefer's loan. Plaintiff's October 2, 1995 Opp. to Summ.J. at 9. Such payment does not render this case moot as against Aetna, because plaintiff still claims from Aetna interest from 1991 in the amount of $1,500 and punitive damages. *Id.* However, this case is moot as to Provident. See note 2, *supra*.

fire department report confirming the date of loss, and a hotel log indicating who stayed in the room in which the fire occurred and could potentially be held responsible for the loss. Schaefer asserts that Aetna should have made its own estimation of the damage at the hotel, rather than requiring Schaefer, then a resident of California, to obtain the requested records. He further states that Aetna was not serious in seeking the identity of the occupant of the room in which the fire occurred because, according to Schaefer, no resident of the low-income Schaefer Hotel would be susceptible to judgment.

Schaefer has set forth three causes of action in his complaint: breach of implied covenant of good faith, breach of contract and negligence. He originally claimed compensatory damages of $5,000 for each of his three claims,[6] but is apparently now seeking only $1,500 in interest in connection therewith.[7] However, whether or not plaintiff is seeking $15,000 of total compensatory damages, plus interest in the amount of $1,500, plaintiff cannot establish the required jurisdictional amount of $50,000 unless plaintiff can, as a matter of Maryland case law, under any circumstances, meritoriously be awarded punitive damages. With regard thereto, Schaefer is asking for punitive damages of $1,000,000 for his first claim only, namely breach of implied covenant of good faith.

In this case, Schaefer bases federal subject matter jurisdiction upon 28 U.S.C. § 1332(a), i.e. diversity of citizenship. Aetna has moved for summary judgment. However, before reaching that summary judgment motion, this Court, *sua sponte, see Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites,* 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982); 13 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3522 at 69–70 & n. 2 (1984), will consider whether subject matter jurisdiction is present, i.e. specifically whether the jurisdictional amount of $50,000 can possibly, as a matter of law, be established by Schaefer.

Generally, a "plaintiff's allegation that the matter in controversy exceeds the jurisdictional amount requirement is sufficient to meet the amount in controversy test, unless challenged." 14A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3702 at 17 (1985). However, in this case, if punitive damages are not recoverable, than the complaint itself discloses that the small total amount of compensatory damages sought falls far below the jurisdictional amount. "[T]he party seeking to invoke the jurisdiction of the federal courts has the burden of proving its existence by showing that it does not appear to a legal certainty that its claim is for less than the jurisdictional amount." *Id.* at 19. This is known as the legal certainty test. Schaefer, herein, has confined himself to claiming, at most, a total of $15,000 compensatory damages plus $1,500 of interest, in connection with all of his claims; plus punitive damages of $1,000,000 for breach of implied covenant of good faith. Accordingly, plaintiff's claims for damages do not reach the $50,000 requirement of 28 U.S.C. § 1332(a) unless, as a matter of law, plaintiff may be able to obtain the punitive damages he seeks. It is because plaintiff cannot so do that this Court will hold in this opinion that subject matter federal jurisdiction on the grounds of diversity of citizenship is lacking. *See Cadek v. Great Lakes Dragaway, Inc.,* 58 F.3d 1209, 1212 (7th Cir.1995), quoting in part from *Risse v. Woodard,* 491 F.2d 1170, 1173 (7th Cir.1974). In addition, it is to be noted that "claims for punitive damages proffered for the purpose of achieving the jurisdictional amount should be carefully examined." *Saval v. BL Ltd.,* 710 F.2d 1027, 1033 (4th Cir.1983).

Here, a determination in a summary judgment context of the jurisdictional amount first requires a determination of the punitive damages issue, on the merits, in so far as plaintiff's breach of implied covenant of good faith claim is concerned. Therefore, as to the latter, summary judgment is appropriate,

---

6. Complaint at 8.

7. Plaintiff's October 2, 1995 Opp. to Summ.J. at 9.

but only as to it, not as to any other issue raised by plaintiff's complaint.[8]

Accordingly, this Court will, in a separate order of today's date, grant partial summary judgment as to that one claim for punitive damages by plaintiff, and will dismiss, without prejudice, for want of federal subject matter jurisdiction, all liability and all other damages claims stated or raised by plaintiff's complaint.

## I. SUMMARY JUDGMENT

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. "[A] defendant moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that he is entitled to judgment as a matter of law. . . . Once a defendant makes the necessary showing, the plaintiff must go forward and produce evidentiary facts to support his contentions." *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir.1984). In fact, the non-movant "may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). However, the non-movant is entitled to have all reasonable inferences drawn in his favor. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–10, 26 L.Ed.2d 142 (1970).

## II. PUNITIVE DAMAGES

■ As an initial matter, this Court looks to the law of the forum, i.e. Maryland, to determine what state law is applicable. *Klaxon Co. v. Stentor Electric Manufacturing Co., Inc.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). Maryland applies the principle of *lex locus contractus*. *Eastern Stainless Corp. v. American Protec-*

tion *Ins. Co.*, 829 F.Supp. 797, 799 (D.Md. 1993). In the within case the insurance contract was countersigned, delivered, and paid for in Maryland on or about the date the insurance policy became effective.[9] Thus, while "the determination of the amount in controversy is a federal question to be decided under federal standards," *Novosel v. Northway Motor Car Corp.*, 460 F.Supp. 541, 544 (N.D.N.Y.1978), Maryland law is applicable in so far as any issues of contract law are involved. As to all tort claims, Maryland follows the rule of *lex locus delicti*, i.e. where the alleged tort occurred. *Ward v. Nationwide Mutual Auto Insurance Co.*, 328 Md. 240, 244 n. 2, 614 A.2d 85 (1992), *Hauch v. Connor*, 295 Md. 120, 123–25, 453 A.2d 1207 (1981). However, the issues involved herein, respecting tort law, concern availability to plaintiff herein of punitive damage claims, not to a tort liability issue as such. Under choice of law principles, both this Court and a Maryland court would seemingly look to Maryland law as governing the question of whether or not Schaefer has stated or can state any viable claim for punitive damages. *See Saval v. BL Ltd.*, 710 F.2d 1027, 1033 (4th Cir.1983). *See also* Restatement (Second) of Conflict of Laws §§ 145, 171 (1971). "The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties. . . ." *Id.* at § 145. "The law [so] selected . . . determines the measure of damages." *Id.* at § 171. In this case, the parties seem to agree that the contract was "countersigned, delivered and paid for" in Maryland.[10] Where each of the alleged tortious acts discussed *supra* in this opinion[11] took place is not specified by either of the parties, but nothing in the record indicates that any of them, if they in fact occurred, did not take place in Maryland, or that the law of Maryland is not the law to which such acts, or lack of them, bear "the most significant relation-

---

**8.** See cases discussed and/or cited in Section III "Relief", *infra*.

**9.** Supplemental Memorandum in Support of Summary Judgment, filed by defendant on November 15, 1995, p. 4, n. 7.

**10.** Defendants' November 15, 1995 Supplemental Memorandum in Support of Summary Judgment at 4.

**11.** See pp. 1096–97, *supra*.

ship." Thus, Maryland governs the availability *vel non* of punitive damages in this case.

Citing to Maryland law, defendants argue that Schaefer cannot recover punitive damages from Aetna because no contract exists between Aetna and Schaefer. However, Maryland recognizes the doctrine of third-party beneficiary which "permits a person for whose benefit a contract is made to maintain an action on it without any privity of contract." *Parlette v. Parlette*, 88 Md.App. 628, 637, 596 A.2d 665 (1991). In order to recover damages under the insurance contract as a third-party beneficiary, Schaefer must show that the contracting parties clearly intended him to benefit from it. *Id.* at 637, 596 A.2d 665. Schaefer alleges that while Provident and Aetna negotiated the insurance contract, Schaefer paid the premiums and was entitled to enjoy the benefits of the contract.[12] Defendants do not dispute those allegations and indeed, to the contrary, seem to admit them. Defendants have included as an exhibit attached to their motion for summary judgment a letter from a Vice President at Provident addressed to Schaefer which states: "The policy at time of loss was in the name of Provident Bank of Maryland despite your reimbursing us for the annual premium. . . .

12. Complaint ¶ 3.

13. Defendants' September 18, 1995 Motion for Summary Judgment, Exhibit D, at 2.

14. Defendants rely on two cases for the proposition that Mr. Schaefer cannot recover on the insurance contract because he was not a party thereto. Both cases are distinguishable. In the first case, *Tubize Chatillon Corp. v. White Transportation Co.*, 11 F.Supp. 91, 98 (D.Md.1935), decided prior to *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1937) and seemingly applying largely federal law, Judge Chesnut states: "In the field of the insurance of property . . . it is well established law that no person may sue on the contract unless specifically named therein, or unless the policy contains general language inclusive of the party to be benefitted." However, Judge Chesnut characterized this rule as a specific application of the general contract rule that "a third person cannot sue for the breach of a contract to which he is a stranger unless he is in privity with the parties." *Id.* (quoting *German Alliance Ins. Co. v. Home Water Supply Co.*, 226 U.S. 220, 234, 33 S.Ct. 32, 36, 57 L.Ed. 195 (1912)). Since 1866, Maryland has recognized "the establishment of the doctrine of third-party beneficiary in the landmark

It is my understanding that Aetna will be in communication with you in an attempt to resolve this matter in good faith."[13] A reasonable inference from the fact that Schaefer paid the premium is that the parties intended him to benefit in some way from the contract. The fact that Provident expected Schaefer and Aetna to resolve the dispute further supports that inference. Because reasonable inferences from facts in the record suggest that Schaefer is a third-party beneficiary of Provident's insurance policy with Aetna, this Court will make that assumption for purposes of the pending motion.[14]

The only cause of action in connection with which Schaefer seeks punitive damages is breach of implied covenant of good faith. However, "the implied covenant of good faith and fair dealing, which Maryland recognizes in certain contracts, does not create any duties outside the realm of contract." *Stephens v. Liberty Mutual Fire Insurance Co.*, 821 F.Supp. 1119, 1122 (D.Md.1993). Because punitive damages are not available in contract actions, *Johnson v. Federal Kemper Insurance*, 74 Md.App. 243, 249, 536 A.2d 1211, *cert. denied*, 313 Md. 8, 542 A.2d 844 (1988), unless Aetna committed a tort arising

decision of the Court of Appeals of New York in *Lawrence v. Fox*, 20 N.Y. 268 (1859) . . . See *Small v. Schaefer*, 24 Md. 143 (1866)." *Shillman v. Hobstetter*, 249 Md. 678, 687, 241 A.2d 570 (1967). Furthermore, Judge Chesnut noted that the plaintiff's argument that it was the real party in interest in the insurance contract involved in that case would have been strengthened if plaintiff had given notice and proof of loss directly to the insurer, which plaintiff had not done. *Id.* at 99. In this case, to the contrary, Plaintiff Schaefer initially dealt directly with Aetna, rather than having Provident submit a claim, thus strengthening his contention that he is a third-party beneficiary to the contract.

In the second case, *Clemons v. American Casualty Co.*, 841 F.Supp. 160 (D.Md.1993), while Judge Motz did conclude, as defendants argue, that a mortgagee not named as such under a property insurance policy was not entitled to recover from the insurer under the policy at issue in that case, he did so only after finding that the mortgagee "offered no evidence, either within the policy or extrinsic to it, demonstrating that defendant intended to insure him." *Id.* at 163. Here, both parties have alleged facts which inferentially establish that Aetna and Provident intended Schaefer to benefit from the insurance contract at issue here.

from the contract, *H & R Block, Inc. v. Testerman*, 275 Md. 36, 44, 338 A.2d 48 (1975), *abrogated on other grounds by Owens–Illinois v. Zenobia*, 325 Md. 420, 453, 601 A.2d 633 (1992), Schaefer cannot obtain such damages with respect to his claim for breach of implied covenant of good faith or for breach of contract.

Schaefer asserts only that Aetna failed promptly to settle his insurance claim—and that in and of itself is not tortious. In *Johnson*, 74 Md.App. 243, 536 A.2d 1211, the plaintiff insured argued that the defendant insurer improperly delayed payment of the claim. That situation, which involved only the insured and the insurer, is termed a first party claim. As Judge Weant, writing for Maryland's highest court, observed in *Johnson*, "Maryland does not recognize a *tort* action against an insurer for bad faith failure to pay a *first party* insurance claim." [15] *Id.* at 246, 536 A.2d 1211 (emphasis added). Judge Weant then concluded that Plaintiff Johnson's claim was a contract action for which plaintiff could not recover punitive damages. An insured's "bad faith refusal to settle a *third party* claim against the insured in excess of its liability limits," *id.* at 247, 536 A.2d 1211, may give rise to a cause of action in tort. But each and all of the claims by Schaefer are first party claims by the equivalent of the insured against the insurer. Even though Schaefer is a third party beneficiary, he stands in the shoes of the insured. *See King v. Government Employees Insurance Co.*, 843 F.Supp. 56, 57 (D.Md.1993) (Smalkin, J.) Thus, Schaefer's assertion of breach of implied covenant of good faith, in connection with which he seeks compensatory and punitive damages, must be determined by this court, to a legal certainty, to fail to provide a possible basis for claim of damages, compensatory or punitive, in a total amount exceeding or equal to $50,000 in order for federal subject matter jurisdiction in this case to be absent.[16] While such *compensatory* damages may legally be within plaintiff's reach, they alone cannot come close, in the light of the record in this case, to climbing to that amount. Therefore, it is not necessary for this Court to reach and decide the merits of that issue because such decision will not in any event decide the jurisdictional amount question. As to Schaefer's assertion of negligence, that, as indicated in this opinion, fails as a matter of law. As to any assertion of punitive damages for breach of contract, that would also fail because it sounds entirely in contract only, not at all in tort, and, as discussed *supra*, punitive damages may not be awarded "in an action for breach of contract alone." *Johnson*, 74 Md.App. at 249, 536 A.2d 1211.

With regard to a "mere negligent breach of a contract, [that] is not enough to sustain an action sounding in tort." *Heckrotte v. Riddle*, 224 Md. 591, 595, 168 A.2d 879 (1961). Cases in which Maryland courts have recognized hybrid tort/contract claims have "invariably involved traditional or 'pure' torts where the tortfeasor and the victim happen to share a contractual relationship." *Stephens*, 821 F.Supp. at 1123 & n. 6. As stated *supra*, Schaefer has not alleged that Aetna committed any "pure" tort here. He complains only that Aetna breached its insurance contract by not paying his claim promptly. Thus, even if plaintiff had claimed, in his complaint, punitive as well as compensatory damages, in connection with plaintiff's negligence and/or breach of contract claims, he could not, as a matter of law, obtain any punitive damages. In addition, under Maryland law, a plaintiff cannot obtain punitive damages in a non-intentional tort action unless plaintiff can prove that the defendant acted with actual malice. *Owens–Illinois v. Zenobia*, 325 Md. 420, 460, 601

---

**15.** In making this statement, Judge Weant relied upon *Caruso v. Republic Insurance Co.*, 558 F.Supp. 430 (D.Md.1983). *Id.*, 74 Md.App. at 246, 536 A.2d 1211.

**16.** In *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938), the Supreme Court stated that
  if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed.
*Id.* at 289, 58 S.Ct. at 590. Herein, it is so "apparent."

A.2d 633 (1992). Maryland courts have defined actual malice as heinous conduct that is "characterized by evil motive, intent to injure, ill will or fraud." *Id.* at 454, 460, 601 A.2d 633. It has also been defined as an act performed "without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff." *Testerman,* 275 Md. 36, 43, 338 A.2d 48 (1974), *abrogated on other grounds by Owens–Illinois v. Zenobia,* 325 Md. 420, 453, 601 A.2d 633 (1992). *See also Drug Fair v. Smith,* 263 Md. 341, 352, 283 A.2d 392 (1971) (defining actual malice as "an unlawful act performed with evil or rancorous motive and motivated by hatred"). Furthermore, in *Montgomery Ward v. Wilson,* 339 Md. 701, 664 A.2d 916 (1995), Judge Eldridge wrote:

> In *[Owens–Illinois v.] Zenobia* [, 325 Md. 420, 601 A.2d 633 (1992),] the Court recognized that punitive damages may only be awarded on the basis of tortious conduct which is particularly heinous, egregious and reprehensible. 325 Md. at 454, 601 A.2d at 649–650. We concluded in *Zenobia,* 325 Md. at 469, 601 A.2d at 657, that "[u]se of a clear and convincing standard of proof will help to insure that punitive damages are properly awarded. We hold that this heightened standard is appropriate in the assessment of punitive damages because of their penal nature and potential for debilitating harm."

*Id.* at 734, 664 A.2d 916. Plaintiff's allegations in this case fall far short of adding up to the establishment of "actual malice."

In sum, in the absence of any chance of his being awarded punitive damages under any of the allegations in his complaint, plaintiff, to a legal certainty, has not meritoriously alleged the jurisdictional amount of $50,000.

### III. RELIEF

■ Defendants take the position that this Court should grant full summary judgment to defendant with regard to each and all of plaintiff's allegations, and should not confine itself to dismissing plaintiff's complaint, without prejudice, for want of subject matter jurisdiction. Defendants' said contention finds support in the case law as to the punitive damages issue related to plaintiff's breach of implied covenant of good faith claim but not as to any other damages issue and not as to any liability issue. When

> issues of jurisdictional facts are intermeshed with the merits of a case, "the jurisdictional issues should be referred to the merits, for it is impossible to decide one without the other." *McBeath v. Inter-American Citizens for Decency Committee,* 374 F.2d 359, 363 (5th Cir.1967), [*cert. denied,* 389 U.S. 896, 88 S.Ct. 216, 19 L.Ed.2d 214 (1967) ]. The purpose of this rule is to discourage district courts from dismissing cases on the pleadings for want of jurisdiction unless the pleadings reveal a clearly insubstantial or frivolous claim. *Compare Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946). Thus, "[w]here the defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper course ... is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case." *Williamson v. Tucker,* 645 F.2d 404, 415 (5th Cir.1981), [*cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981) ]. Judicial economy further counsels resolution on the merits in these instances so that the court can avoid duplicate trials of facts essential to both jurisdiction and the merits of the claim. *Id.* at 415–16.
>
> As a result, when a plaintiff has alleged an ongoing violation for purposes of [33 U.S.C.] § 1365(a) [statute allegedly granting district court jurisdiction in *Sierra Club* ], but he fails to demonstrate a fact issue about whether a defendant is "in violation," the court should grant summary judgment for the defendant on the merits under Fed.R.Civ.P. 56, instead of dismissing for want of jurisdiction under Fed. R.Civ.P. 12(b)(1).

*Sierra Club v. Shell Oil Co.,* 817 F.2d 1169, 1172 & n. 3 (5th Cir.), *cert. denied,* 484 U.S. 985, 108 S.Ct. 501, 98 L.Ed.2d 500 (1987) (footnote omitted).[17] *See also Wheeler v.*

---

17. In some cases in which plaintiffs have lost

under the "legal certainty" test, courts have dis-

*Hurdman,* 825 F.2d 257, 258, 259 (10th Cir. 1987) (applying summary judgment standards); *Thornhill Publishing v. General Telephone & Electronics,* 594 F.2d 730, 733–35 (1979) (referring to summary judgment approach); *St. Mary's of the Plains v. Higher Ed. Loan Program,* 724 F.Supp. 803, 805 (D.Kan.1989) (no reference to summary judgment, but district court determined merits of plaintiff's claims pursuant to Rule 12(b)(6)); *Freudenberg v. Harvey,* 364 F.Supp. 1087, 1090, 1094 (E.D.Pa.1973) (denying defendant's motion to dismiss for lack of federal subject matter jurisdiction because, according to defendant, an exemption under the Fair Labor Standards Act, 29 U.S.C. § 213(a)(2) was applicable; the district court reserved the possibility of summary judgment at a later stage of the proceedings after completion of discovery). See, further, *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946).

As to plaintiff's claims in the within case other than those related to punitive damages growing out of plaintiff's allegations of breach of implied covenant of good faith, they are dismissed without prejudice since they *do not need to be reached* herein to determine the jurisdictional amount issue. *See Murray v. United States,* 686 F.2d 1320, 1327 n. 14 (8th Cir.1982), *cert. denied,* 459 U.S. 1147, 103 S.Ct. 788, 74 L.Ed.2d 994 (1983) ("Where a motion to dismiss for lack of subject matter jurisdiction is granted on grounds of sovereign immunity, the court is left without power to render judgment on the merits of the case.").[18] Plaintiff's claims in this case for punitive damages in connection with breach of contract and also with regard to negligence, would seemingly need to be resolved on the merits if plaintiff was claiming any such punitive damages,—but plaintiff has not so done. As to plaintiff's claims for compensatory damages and interest in connection with each and all of plaintiff's assertions of liability, those damages claims cannot in any event add up to the $50,000 jurisdictional amount and, accordingly do not, at this time, require reaching—and will not be determined by this opinion—on the merits.

Thus, this Court concludes that defendants' position that this Court should grant to them summary judgment is meritorious in so far as plaintiff's claim for punitive damages for breach of implied covenant of good faith is concerned, since plaintiff has contended—and lost—on the merits with respect to its quest for punitive damages for breach of implied covenant of good faith. Plaintiff would also so have lost on the merits if plaintiff had sought punitive damages for breach of contract and/or for negligence, quests which plaintiff could have pursued. Plaintiff however has not so done, so those merit questions are not before this Court at this time. If plaintiff does attempt, at a date in the future, to press those claims on the merits, plaintiff may be faced with application of the doctrine of preclusive effect, which attaches when a party could have, and did not, state a contention as to a merit issue. *Kutzik v. Young,* 730 F.2d 149, 151 (4th Cir.1984). However, those preclusion issues are not before this Court at this time and therefore will also not be decided herein.

---

missed, without discussing the possibility of summary judgment being awarded by the court in whole or in part. *See, e.g., Packard v. Provident National Bank,* 994 F.2d 1039, 1046–50 (3d Cir.), *cert. denied sub nom., Upp v. Mellon Bank, N.A.,* —— U.S. ——, 114 S.Ct. 440, 126 L.Ed.2d 373 (1993) (involving punitive damages under Pennsylvania law); *Allison v. Security Ben. Life Ins. Co.,* 980 F.2d 1213, 1215 (8th Cir.1992) (involving punitive damages under Arkansas law); *Serrano v. Nicholson Nursery, Inc.,* 844 F.Supp. 73, 75–77 (D.P.R.1994) (involving emotional or moral damages under Puerto Rican law); *Bellock v. Orkin Exterminating Co., Inc.,* 754 F.Supp. 122, 125–26 (N.D.Ill.1990) (involving punitive damages under Illinois law). In a case in which there are no filings other than the pleadings, then the choice of remedy as to a particular issue would seemingly lie between dismissal with or without prejudice and not involve a possibility of summary judgment.

**18.** Such "without prejudice" treatment is employed with regard to pendent claims or supplemental jurisdictional claims when the underlying federal question or diversity of citizenship claim is dismissed early in the case. *See Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 & n. 7, 108 S.Ct. 614, 619 & n. 7, 98 L.Ed.2d 720 (1988). *See also Hardy v. Birmingham Bd. of Educ.,* 954 F.2d 1546, 1550 (11th Cir.1992); *In re Conklin,* 946 F.2d 306, 324 (4th Cir.1991). See further David D. Siegel, *The 1990 Adoption of § 1367, Codifying "Supplemental" Jurisdiction,* Practice Commentary following 28 U.S.C.A. § 1367, 829 (1993).

Accordingly, defendant is not entitled to summary judgment with respect to plaintiff's claims for punitive damages for breach of contract or for negligence and, as to them, is entitled merely to dismissal without prejudice.

Two cases are particularly instructive in the within case with regard to the type of relief which defendants should receive. In the first such case, *Trentacosta v. Frontier Pacific Aircraft Industries,* 813 F.2d 1553 (9th Cir.1987), plaintiff claimed federal jurisdiction on the basis of a federal question regarding the Jones Act, a federal statute. In that case, after finding that plaintiff failed to state a claim under the Jones Act against certain defendants, the district judge dismissed the Jones Act claim against those defendants. Plaintiff had not so stated a claim because plaintiff did not present any evidence outside his pleadings to show that those defendants were his employers within the meaning of the Jones Act. *Id.* at 1559. Because jurisdiction over the remaining claims was pendent to the Jones Act claim, the district court also dismissed those pendent claims against those defendants.[19] The Ninth Circuit, affirmed in part, reversed in part, and remanded. In so doing, the Ninth Circuit basically approved the district court's above described approach. The Ninth Circuit did not say that the district court should have granted summary judgment as to all claims of the plaintiff. Instead, the Ninth Circuit, after noting that "a motion to dismiss for lack of subject matter jurisdiction 'may be made as a 'speaking motion' attacking the existence of subject matter jurisdiction' without converting the motion into a motion for summary judgment," *id.* at 1558 (quoting *Thornhill Publishing v. General Telephone & Electronics,* 594 F.2d 730 (1979)), also wrote that "the district court should have applied summary judgment standards to the motion to dismiss." *Id.* Applying such standards, the Ninth Circuit concluded that the district judge properly dismissed plaintiff's contention that certain of the defendants were employers with regard to the Jones Act claim, but should have independently, upon plaintiff's motion for reconsideration, permitted plaintiff to amend his complaint in that regard. *Id.* at 1561–62.

In the second case, *Washington Central R.R. Co. v. National Mediation Board,* 830 F.Supp. 1343 (E.D.Wash.1993), plaintiff's complaint alleged that defendant National Mediation Board (NMB) violated the Railway Labor Act (RLA) and the federal Constitution. Federal jurisdiction was premised on a particular section of the RLA which granted federal courts jurisdiction over cases in which the NMB grossly violated the RLA, or committed a federal constitutional violation. Defendant filed a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, and both parties filed motions for summary judgment. The district court, noting that it needed to reach the merits of each of plaintiff's claims in order to decide the jurisdictional question, resolved that question "through the cross-motions for summary judgment rather than through the Rule 12(b)(1) motion." *Id.* at 1356. In *Washington Central,* the Court also wrote

> Rule 12(b)(1) motions are generally considered motions in abatement that do not go to the merits of the case. 5A Wright & Miller, Federal Practice and Procedure, § 1350 (1990). When resolution of a jurisdictional issue is separable from resolution of factual disputes on the merits of the case, the court may consider evidence presented on the jurisdictional issue, and, if necessary resolve disputes as to jurisdictional facts. However when resolution of the jurisdictional issue requires an inquiry into the merits of the case, the court should not treat the matter as one in abatement, and should instead "await a determination of the merits either by the court on a summary judgment motion or by the fact finder at trial." 5A Wright & Miller, *supra,* at p. 235; *see also, Trentacosta v. Frontier Pacific Aircraft Indus.,* 813 F.2d 1553, 1558–59 (9th Cir.1987).

*Id.* (citations omitted).

Following the approach so indicated in *Washington Central,* by Wright & Miller,

---

19. It is not clear whether either or both of the two dismissals in *Trentacosta* were with or without prejudice, though seemingly the first said dismissal was with prejudice and the second without prejudice.

and by certain of the other cases cited *supra*, this Court, because the punitive damages issue as to plaintiff's claim for breach of implied covenant of good faith, presents no disputed questions of facts and should be accordingly ruled upon in a summary judgment context, will today enter a separate Order granting summary judgment as to plaintiff's stated claims for punitive damages with regard to that one claim, and will today dismiss, without prejudice, all of plaintiff's remaining claims.[20]

**20.** In so doing, this Court does not reach, discuss, and/or decide any of defendants' positions as to certain non-jurisdictional issues such as limitations and only reaches and decides the substantive merits of defendants' position as to punitive damages for breach of implied covenant of good faith because that issue *must* be reached in order for this Court to decide the subject matter amount jurisdictional question. As to certain other liability and/or damages issues, this Court does, in the within opinion, discuss them, in order to explain why they are not decided herein, and for no other reason.