**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

NEW YORK LIFE INSURANCE
COMPANY,
<u>Plaintiff-Appellee,</u>

v.

MITCHEL L. HARVEY,                                        No. 97-2140
<u>Defendant-Appellant,</u>

and

LAWRENCE O. HARRIS,
<u>Defendant.</u>

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Alexander Williams, Jr., District Judge.
(CA-96-824-AW)

Argued: May 6, 1998

Decided: June 26, 1998

Before WIDENER and MOTZ, Circuit Judges, and
HOWARD, United States District Judge for the
Eastern District of North Carolina, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Thomas Fortune Ray, THOMAS FORTUNE RAY, P.C.,
Washington, D.C., for Appellant. Gregory Lee VanGeison, ANDER-
SON, COE & KING, L.L.P., Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

In March 1996, New York Life filed an action in the United States District Court for the District of Maryland requesting a declaratory judgment concerning its obligation to continue paying benefits to appellant, Mitchel L. Harvey, under two policies it issued to him. The first policy was a disability policy, which began paying benefits to Harvey in 1989, and, in January 1996, was paying Harvey $3,107.50 per month. The second was an income insurance policy, which also began paying benefits to Harvey in 1989, and was paying appellant $8,719.20 per month as of January 1996. New York Life paid these benefits based on Harvey having a "mild" heart attack in 1989 which he claimed was "disabling."[1] New York Life did not seek a return of all its money, but only a declaration that it was not obligated to continue paying Harvey since he was no longer disabled.

The total disability policy provided for a monthly benefit, and defined total disability as follows:

> When a total disability starts, until 5 years after the income starting date, total disability means as follows: the Insured can do none of the essential acts and duties of his or her job and is not working at any other gainful job. After 5 years from the income starting date, if a new period of disability does not apply, total disability will then mean as follows: the Insured can do none of the essential acts and duties for the jobs for which he or she is suited.

_____

[1] New York Life contends it paid Harvey more than $850,000 in insurance benefits over the seven-year period during which Harvey reported he could not work because of the heart attack he suffered in February 1989. Harvey recovered $144,000 from the overhead insurance policy, $222,889.17 from the disability policy, and $483,579.91 from the income policy.

2

Since it had already paid five years of benefits, New York Life was administering the policy under the second definition of total disability, i.e., that the "Insured can do none of the essential acts and duties for the jobs for which he or she is suited," when it ceased paying benefits to Harvey in 1996.

The income insurance policy provided that it would pay a benefit for each calendar month that the insured had a covered income loss after the end of a waiting period and during the benefit term. The policy stated that a "covered income loss" existed "for any calendar month in which the Insured has a loss of income of at least 20%. The loss must result, directly and apart from anything else, from an injury or sickness."

Harvey reported that shortly before his heart attack, he earned almost $300,000 per year as part-owner of a travel agency. On February 7, 1989, when he was thirty-eight years old, Harvey had a mild heart attack, which Harvey contended made "everything change[ ]." Harvey was treated by Dr. Francis Chucker and remained under Dr. Chucker's care through October 1996. Harvey alleges that he continues to suffer chest pain, but admits that his physicians have not identified the cause of this pain.

Judge Alexander Williams conducted a bench trial on June 30 and July 1, 1997, to determine whether Harvey qualified for benefits under the two insurance policies issued by New York Life. New York Life called two witnesses on its behalf: Carol McGrath, a vice-president with New York Life with 27 years of experience in claims, and Dr. Nicholas Fortuin, a cardiologist and full Professor of Medicine at the Johns Hopkins School of Medicine.

McGrath testified that New York Life began investigating Harvey after it received suspicious notices in the first few months of 1996 that indicated Harvey was assigning his monthly benefits. In February 1996, Harvey assigned his benefits three times, thereby creating conflicting claims to his benefits. Harvey disclosed to New York Life that he assigned some of the claims to a loan shark who had loaned Harvey $12,000 at the interest rate of $12,000 per month. Harvey claimed he assigned his benefits to the loan shark out of fear for his and his family's safety. When a New York Life representative questioned Dr.

3

Chucker, who had signed the forms certifying Harvey's total disability, Dr. Chucker stated Harvey had recovered from the 1989 heart attack, he had not restricted Harvey's activities, and that no physical condition prevented Harvey from returning to work.

Dr. Fortuin testified that after examining Harvey and reviewing Dr. Chucker's office chart, Harvey's hospital admission records and records from Harvey's cardiologists, he concluded that Harvey had suffered a "very small" heart attack and that Harvey was able to work in <u>any</u> occupation, including a job that involved emotional stress. Dr. Fortuin testified that "there is a marked paucity of information" as to whether stress plays a "role in the progression of arterial disease." Dr. Fortuin also testified that although Harvey suffered chest pain, none of the physicians who examined Harvey considered his chest pain to be caused by heart disease.

Harvey and Dr. Chucker testified on Harvey's behalf. Dr. Chucker testified that Harvey's 1989 heart attack was minor and that Harvey had recovered from it within a few months. Dr. Chucker further stated that Harvey's heart was functioning normally at the time of trial and that he had told Harvey he could return to work.

Harvey testified that after his heart attack he was unable to manage his travel business. In his absence, Harvey's partner, Claude Hicks, slowly destroyed the business allegedly by looting it for himself. Harvey eventually filed for bankruptcy, lost his home and was forced to move. Harvey claimed the physical effects of the heart attack, combined with the inherent stresses of the travel business industry, his ensuing bankruptcy, and his depression prevented him from working. Harvey claimed that he had standing doctor's orders to avoid as much stress as possible and that, because work in the travel industry was stressful, he was unable to handle such work due to his physical condition.**2** Harvey described his current work as that of a "househusband."

_____

**2** Harvey also admitted that in September 1995, while he was receiving benefits from New York Life, he pled guilty in the Circuit Court for Arlington County, Virginia to credit card fraud and credit card theft. In addition, in February 1996 Harvey pled guilty in the District Court of Maryland for Montgomery County to theft from his son's youth soccer league.

4

The district court concluded that "under the plain and unambiguous reading of the [disability] policy . . . New York Life has established by a preponderance of the evidence that Mr. Harvey is not totally disabled." Judge Williams explained:

> In other words, I cannot find that he cannot do any of the essential acts and duties of the job for which he is suited considering his schooling, training and experience. There's just nothing in the record to establish that, no medical testimony. There's nothing other than Mr. Harvey's self-serving subjective statements. He doesn't believe [he can return to work] simply because no one has given him a guarantee and no one has told him anything and he doesn't want to risk injuries on behalf of his family. Well, that's just not enough on this record.

(J.A. at 275.)

Furthermore, the district court determined that Harvey no longer was suffering a "covered income loss" under the income insurance policy because the evidence reflected that his heart had healed and was functioning normally, and the policy required that each month's loss result from an injury or sickness. Accordingly, Judge Williams ruled that New York Life was not obligated to make additional payments to Harvey under the disability or the income policy.

The parties agree that this court must review the district court's findings of fact under the clearly erroneous standard,[3] and its conclusions of law de novo.[4] The district court properly determined that

_____

[3] See Anderson v. Bessemer City , 470 U.S. 564, 573 (1985) ("If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently."); United States Fire Ins. Co. v. Allied Towing Corp., 966 F.2d 820, 824 (4th Cir. 1992) (according "the highest degree of appellate deference" to district court findings based "upon assessment[s] of witness credibility").

[4] See Hendricks v. Central Reserve Life Ins. Co., 39 F.3d 507, 512 (4th Cir. 1994) ("[S]ince contract interpretation is a question of law[,] [w]here

5

Maryland law governs the resolution of this dispute, which involves insurance policies issued in Maryland to a Maryland resident. See, e.g., Schaefer v. Aetna Life & Cas. Co., 910 F. Supp. 1095, 1098 (D. Md. 1996); American Homeowners Ins. Co. v. Reserve Ins. Co., 264 F. Supp. 632, 633 (D. Md. 1967). Furthermore, this court agrees with the district court that, under Maryland law, New York Life, as the insurer, bears the burden of proving by a preponderance of the evidence that Harvey was not entitled to coverage under the policies. See Maryland Cas. Co. v. Baldwin, 357 F.2d 338, 338 (4th Cir. 1966).

Maryland law provides that in construing insurance contracts, courts are to interpret words in accordance with their "usual, ordinary, and accepted meaning" in the absence of evidence that the parties intended to employ the language in a special sense. Bausch & Lomb Inc. v. Utica Mut. Ins. Co., 625 A.2d 1021, 1031 (Md. 1993). Moreover, where the terms of a contract are "clear and simple," "nothing not provided for by its express terms ought to be imported into it by construction." Mutual Life Ins. Co. v. Murray , 75 A. 348, 350 (Md. 1909).

The terms of the insurance policies at issue in this case were clear and simple, and the district court accorded those words their ordinary and usual meaning. Harvey's disability policy unambiguously defined "total disability" as meaning that "the Insured can do none of the essential acts and duties for the jobs for which he or she is suited." Thus, the resolution of Harvey's entitlement to benefits under this policy hinged not upon any legal interpretation of the contract provisions but instead on the factual issue of whether Harvey's mild heart attack prevented him from working in any of the jobs for which he was suited. The district court resolved this factual dispute in favor of New York Life, after hearing evidence from Dr. Fortuin that Harvey could have returned to work in any capacity, including as a travel

_____

a case turns simply upon a reading of the document itself, there is no reason to believe that a district court is in any better position to decide the issue than is an appellate court. When, however, a ruling depends upon an evaluation of evidence extrinsic to the contract, the standard of review is more deferential, and the appellate court reviews only for clear error.").

6

agency owner, and testimony from Harvey's own doctor, Dr. Chucker, confirming that Harvey was able to return to work. Far from being "clearly erroneous," the district court's factual findings were the only reasonable conclusions it could have reached based on the evidence presented at trial.

Likewise, the provisions of the income insurance policy plainly provided that a "covered income loss" existed for any calendar month in which Harvey had a loss of income of at least twenty percent and that "[t]he loss must result, directly and apart from anything else, from an injury or sickness." Harvey argues that the district court's interpretation added terms that were not part of the policy language by requiring that the loss result from a continuing injury.

This court finds that the district court interpreted the income insurance policy in accordance with its precise language. The policy calculates "covered income loss" by the calendar month. The language provides that the loss, which is measured monthly, must be caused by an injury or sickness. Although Harvey indisputably suffered a heart attack in 1989, the evidence convincingly demonstrates that Harvey has fully recovered from that event. Because New York Life proved that Harvey had not suffered from any injury or illness that created a monthly loss of income after January 1996, he not entitled to additional benefits under the policy.

The evidence before the district court was sufficient to support Judge Williams' determination that Harvey was not physically impaired as a result of his 1989 heart attack, nor had Harvey suffered any other injury or sickness from February 1996 until the time of trial that created a monthly loss for which he was entitled to benefits.

This court's thorough consideration of the parties' oral arguments, combined with our review of the record, briefs and pertinent case law, persuades us that the rulings of the district court were correct in all respects. Accordingly, we affirm on the reasoning set forth in the district court's opinion.

AFFIRMED

7